NATALIE G. MANCHESTER, Appellant, v. E. C. LOOMIS, Administrator, et al., Appellees.

**CONTRACTS: Consideration—Presumption From Writings and Re-**
**1 citals.** An instrument which (1) purports to be a contract, (2) is in writing, and (3) recites a definite and valuable consideration, furnishes, in and of itself, substantive evidence that such instrument was, *in fact,* entered into on sufficient consideration; and the sole survivor who predicates rights thereon may stand on such showing, and demand that his opponent (1) negative the passing of any consideration at the time the instrument was executed, and (2), with due reference to the contract recitals, negative every reasonable hypothesis out of which a consideration for the contract might fairly be deemed probable.

Contract by a mother that her property should pass, on her death, to her son and daughter-in-law reviewed, and held to quite clearly point to a *remote* conveyance by the son and wife to the mother of the son's interest in his father's estate, as a consideration for the mother's contract.

**CONTRACTS: Consideration—Past Consideration.** A transaction
**2** which has apparently been fully closed may furnish ample consideration for a related instrument, executed many years later, when the recitals of the written instruments constituting the former transaction, aided by the illuminating and attending side lights, fairly justify the conclusion that such former transaction was not, in fact, closed, in the sense that the consideration therefor had been fully performed.

**DEEDS: Recital of Consideration.** The recitals of a consideration in
**3** a conveyance, with showing, however, that no consideration passed to the grantor at the time the conveyance was executed, when read

in the light of the circumstances attending the conveyance, may quite clearly demonstrate that the conveyance was not intended as a gift.

**CONTRACTS: Consideration—Performance.** Articles of copartnership between a mother and son reviewed, and held, in view of the circumstances surrounding the parties, not to constitute a performance by the mother of the consideration imposed on her by a deed of conveyance by the son to the mother.

**CONTRACTS: Construction—Contractual (?) or Testamentary (?)** An instrument executed by a mother and son, which provides that the property of the mother shall remain her absolute property during her lifetime, and that the son shall have no right or claim thereto during such lifetime, but that the son, on the mother's death, shall "inherit" such property as the mother "may die seized" of, will not be held to be *testamentary* when, from the instrument as a whole, it is manifest that the parties intended the instrument to be *contractual*.

*Appeal from Wapello District Court.*—H. K. EVANS, Judge.

FEBRUARY 10, 1921.

REHEARING DENIED MAY 10, 1921.

SUIT in equity to adjudicate the validity and effect of a certain written instrument known in the record as "Exhibit C," pursuant to which the plaintiff claims to be the owner of two thirds of the estate in the possession of the administrator defendant. There was a decree dismissing the petition. The plaintiff has appealed.—*Reversed.*

*Roberts & Webber* and *McNett & McNett,* for appellant.

*Sloan & Sloan, Jaques, Tisdale & Jaques,* and *John W. Lewis,* for appellees.

EVANS, C. J.—The instrument Exhibit C was as follows:

"Agreement.

"Whereas, J. C. Manchester died intestate June 29, 1903, leaving Ella J. Manchester, his widow, and Edward A. Man-

chester, his son and only heir at law. The said J. C. Manchester was at the time of his death the owner of considerable property, one third of which would have gone to his widow, by law, and two thirds of which would have descended to his son, but that, on the 3d day of July, A. D. 1903, the said Edward Manchester and his wife, Natalie Manchester, joined in a deed conveying to the said Ella J. Manchester all the real estate owned by the said J. C. Manchester at the time of his death, and on the same day, the said Edward A. Manchester joined in a contract with the said Ella J. Manchester, by the terms of which all the property, money, and notes of the deceased were turned over to the said Ella J. Manchester absolutely, except the one-half interest in the Ballingall Hotel, furniture, fixtures, and the business. Said deed is recorded in the quitclaim record W, page 344, in the recorder's office at Wapello County, Iowa.

"Realizing the fact that the said Edward A. Manchester might die before the death of the said Ella J. Manchester, and in that event the wife of the said Edward A. Manchester would not be an heir of the said Ella J. Manchester, and could not by law inherit any of the said property, and in consideration of the conveyance to me, by the said Edward A. Manchester and wife, all of the property which the said Edward A. Manchester would have been entitled to, as the son and heir of the said J. C. Manchester, deceased: I, Ella J. Manchester, do hereby agree that, at my death, the said Edward A. Manchester, if living, and in case of his death, his said wife, Natalie Manchester, shall inherit all of the property of which I may die seized, either real, personal, or mixed. This, however, expressly understood and agreed that the said Edward A. Manchester or wife shall have or make no right or claim of any kind to any part of the property belonging to the said Ella J. Manchester during the lifetime of the said Ella J. Manchester, but the same is to remain the property of Ella J. Manchester absolutely during her lifetime, and at the time of her death shall be the absolute property of the said Edward A. Manchester, or in the case of his death, his wife's, Natalie Manchester, as above stated.

"It is further agreed that this contract shall take precedence of and be superior to any will which the said Ella J. Manchester may have heretofore or hereafter make, except that,

if the said Ella J. Manchester should so desire, she is to have the right to dispose of, by will or otherwise, not to exceed one third in value of her said property. In witness whereof, we have hereunto signed our names this 6th day of January, A. D. 1908.

>"Ella J. Manchester
>"Edward A. Manchester
>"Natalie Manchester."

The foregoing instrument was duly executed on January 6, 1908, and was duly acknowledged and filed for record.

The antecedent facts leading up to this alleged contract may be stated briefly. J. C. Manchester died suddenly, June 29, 1903, leaving no will. He left surviving him his widow, Ella Manchester, and his only child and heir, Ed Manchester. Natalie Manchester was the wife of Ed. J. C. Manchester left an estate of about $60,000, free from debts. At the time of his death, and for some years prior thereto, he had operated the Ballingall Hotel at Ottumwa, and was the owner of the hotel equipment therein. Up to the time of his death, the father, mother, son, and daughter-in-law all lived together as one family in the hotel, and were all engaged more or less actively in the operation thereof. On July 3, 1903, being the next day following the funeral, the son and daughter-in-law conveyed all the property of the father's estate to the mother by the following instruments, known in the record as Exhibits A and B.

"Exhibit A.

"Know all Men By These Presents: That Edward A. Manchester and wife, Natalie Manchester, of Wapello County and state of Iowa, in consideration of the sum of *exchange of property and one dollar,* to me in hand paid by Ella J. Manchester, of Wapello County, state of Iowa, the receipt whereof I do hereby acknowledge, have bargained, sold, and quitclaimed unto the said Ella J. Manchester and to her heirs and assigns forever all my right, title, interest, estate, claim, and demand, both at law and equity, and as well in possession as in expectancy of, in the following described premises, to wit:

"Lots 36 and 37, Block 3, in Janney's Addition to Ottumwa, Iowa. Also the northwest ½ of the present brick wall of the two-story brick building situated on Lot 5, and all of Lot 6 in H. P. Graves *et al*. Subdivision of Lots 157 and 160, original plat of Ottumwa, Iowa. Also, Lot 29 in the Dain Addition to Ottumwa, Iowa; also, Lots 19 and 20 in Block 17 in S. E. Gross Calumet Addition to South Chicago, in Cook County, Illinois. Also the undivided one-fourth interest in the E½ of the NE¼ of the SE¼ of Section 24, Township 18, Range 15, and the NW¼ of the SW¼ and the S½ of the NW¼ of Section 19, Township 18, Range 14, all in Marion County, Arkansas. Also, all personal property belonging to the estate of J. C. Manchester, deceased, who died intestate, June 29th, 1903, leaving the grantee, his widow, and the grantor, his only child and heir at law. The intention being to convey all interest in said estate, except the hotel business in Ottumwa, which is owned by grantor and grantee jointly, as by written contract this day entered into by the parties, with all and singular the hereditaments and appurtenances thereunto belonging, and Natalie Manchester hereby relinquishes her right of dower in and to the above described premises.

"Signed this 3rd day of July, 1903.

"Edward A. Manchester,
"Natalie Manchester."


"Exhibit B.


"Contract.


"This article of agreement, made and entered into this 3rd day of July, A. D. 1903, by and between Mrs. Ella J. Manchester, widow of J. C. Manchester, deceased, of Ottumwa, Iowa, and Edward A. Manchester, son and only heir at law of said J. C. Manchester, deceased, of Ottumwa, Iowa, witnesseth:

"That whereas said J. C. Manchester died intestate, June 29, 1903, leaving the undersigned as his widow and only heir at law, we therefore make this contract for the purpose of dividing the property of which said J. C. Manchester died seized. It is agreed by and between the parties hereto that the said

Ella J. Manchester is to have and to hold in her own right, by title in fee simple, all the property, personal, real, or mixed, of which said J. C. Manchester died seized, except the hotel business and property connected therewith, including the bar, stock, and fixtures thereto belonging.

"It is further agreed by and between the parties that said hotel business shall be owned jointly by the parties hereto, each owning an undivided ½ interest therein. That the same shall be conducted under the firm name of J. C. Manchester, but that the hotel shall be known, in the future as in the past, as the Ballingall Hotel. By the hotel business herein referred to is meant all the furniture and fixtures and property heretofore belonging to said J. C. Manchester and used in connection with the said hotel business in the Ballingall Hotel in Ottumwa, Iowa, including the bar, saloon stock, and fixtures.

"It is further agreed that the wholesale liquor business heretofore sold to Z. A. Frazier, by contract entered into between said Frazier and J. C. Manchester, shall be conducted in the same firm name, subject to the said contract of sale, but that the payments, when made, shall be paid to said Ella J. Manchester, and shall belong to her.

"It is further agreed by and between the parties that the hotel business hereinbefore referred to shall be conducted and managed by both of the parties hereto jointly as a firm or partnership, and that an accounting of said business shall be had on request of either party at any time.

"It is further agreed that the said Ella J. Manchester hereby assumes all indebtedness against the estate of J. C. Manchester, and she hereby agrees to pay all past debts of J. C. Manchester and to hold said Edward A. Manchester harmless from any indebtedness that might be made a valid claim against the estate of said J. C. Manchester, deceased.

"In witness whereof, we have hereunto signed our names, this 3rd day of July, A. D. 1903.

"Ella J. Manchester.<br>"Edward A. Manchester."

More than four years thereafter, Exhibit C was executed. In June, 1914, the son Ed died testate, survived by his mother

and his widow, and leaving his widow as the sole beneficiary of his will. In May, 1917, the mother died testate. She left an estate of $63,000. She bequeathed to blood relatives, in stated amounts, the sum of $19,000. She also bequeathed the residue of her estate to one of the same beneficiaries. She bequeathed, also, to her daughter-in-law, Natalie, $10,000. This will was made in December, 1914, after the death of her son.

Following the death of J. C. Manchester, the broken family continued as one. They operated the hotel successfully for several years. •During this time, they built a new home, and occupied it together. After the death of the son, the mother and daughter-in-law continued the operation of the hotel for a time, and then sold it. In the meantime, the mother's health had become bad, and she was cared for in the common home by the daughter-in-law until her death. The evidence is undisputed that the relation existing among all the members of this family was, at all times, of the most affectionate and trusting nature.

It is the contention of the plaintiff that, by virtue of the instrument, Exhibit C, she has succeeded to two thirds of all the estate left by her mother-in-law, Ella Manchester.

The contention for the defendants is that the instrument Exhibit C is a nullity, in that it was executory and without consideration, and in that it was testamentary only. It is contended, therefore, that the entire estate, over and above the specified bequests, passes, under the will of Ella Manchester, to the residuary legatee named therein.

Out of an abundance of caution, the arguments of counsel have taken a wide range, and they are to be highly commended for their thoroughness of investigation of the many questions which might arise in the consideration of the case. It will be impracticable, however, for us, within the appropriate limits of an opinion, to follow the briefs into their many ramifications. In view of the conclusion we reach on the question of consideration, we shall confine our discussion mainly to that question.

I.  Was there a consideration?

The instrument purports to be a contract. It is so denominated at its head. It is signed by all the parties thereto. The

plaintiff starts, therefore, with a manifest advantage on that question:

**1. Contracts: consideration: presumption from writings and recitals.**

(1) Because the writing imports a consideration. Code Section 3069.

(2) Because it recites a consideration, and states the source out of which such consideration flows.

The burden is clearly upon the defendant to show affirmatively an absence of consideration. And this means that there is no burden upon the plaintiff to prove that the consideration was in this form or in that form. Her co-contracting parties are dead. Her own mouth is sealed by that fact. The *fact* of consideration is all that is material to her, and she may stand upon the legal presumption arising out of the recitals of a written contract, even though she be unable to specify by competent oral evidence just what the specific consideration was. The burden cast upon the defendant to show want of consideration is not met by a showing that no consideration passed at the time the instrument was signed. With due reference to the recitals of the instrument, the defendant must negative, not only some particular form of consideration, but every reasonable hypothesis out of which a consideration for this contract might fairly be deemed probable, or perhaps possible.

Because of the recitals of the instrument, the consideration, if any, must be deemed to arise in some manner out of the transaction of July 3, 1903. So far the parties are agreed. The plain-

**2. Contracts: consideration: past consideration.**

tiff pleaded that the agreement of July 3, 1903, failed to express the real agreement of the parties, and that such agreement, in fact, contemplated the very provisions afterwards incorporated in Exhibit C. These allegations were denied by the defendants, and their argument challenges the plaintiff to competent proof of such allegations. It is sufficient to say here that the allegations were quite unnecessary, as such, and that the plaintiff is under no burden of proof thereon. Without such allegations, such hypothesis was permissible to the plaintiff as a possible response to the recitals of Exhibit C, and the burden was on the defendants at all times to negative it, rather than upon the plaintiff to prove it.

This is the separating point in the argument of respective counsel on the question of consideration. The argument for the defendants is that the transaction of July 3, 1903, could not operate as a consideration for Exhibit C, because it was a complete and closed transaction, and the consideration therefor was, therefore, a "past consideration," and as such was not again available. The major premise of this argument is the assumption that the conveyance to the mother by the son and daughter-in-law of the son's interest in the father's estate was a completed gift; and that, being such, it could not later become a consideration for a new contract. We premise this discussion, therefore, with two questions, which will indicate the line of our discussion:

3. DEEDS: recital of consideration.

(1)	Was the conveyance of July, 1903, a *gift*?

(2)	If not a gift, was it a closed transaction, in the sense that the consideration for the conveyance had been performed?

These questions could have been readily answered by the testimony of the parties to the instrument in their lifetime. The record discloses that there is no competent oral evidence available now for such purpose, in any detailed sense. Considerable evidence has been introduced over objections, much, if not most, of which is incompetent, under the statute. Some general facts are made to appear without substantial dispute. The witness Garriott, who was one of the friends of the deceased father, had a conversation with the son, Ed, wherein he suggested a conveyance by Ed to his mother. He also had a separate conversation with the mother, wherein he suggested substantially the same thing. The instruments Exhibits A and B were prepared by the family attorney, Cornell, upon the suggestion or direction of Garriott. Garriott was never present at any conversation between mother and son on the subject. It is to be inferred from the record that he did understand, from one or both of them separately, that the conveyance was to be made. He had no knowledge of what consideration for the conveyance was agreed upon or understood between them. The family attorney, Cornell, having prepared the instruments, took them to the hotel for execution. He had no prior conference with any of the parties to the instruments. They were there formally executed, without any disclosure of just what the consideration, if any, was to be.

No consideration was, in fact, paid or performed at that time. The fact stands forth, without dispute, that, if any consideration was agreed on, it remained unperformed at the time of the conveyance. This is the general state of the evidence upon which defendants predicate the assumption of gift. As against this, the deed of conveyance *purported* to be for a consideration. The purported consideration was an "exchange of property." The clear implication of this recital was that the grantors were to receive in exchange for this conveyance some property or property right. They did not receive any on the day of the conveyance, and had not received any up to January, 1908, when Exhibit C was executed. True, the validity of the deed was not vitiated by the failure to perform the consideration, but the grantee therein continued under obligation to perform such consideration. While such obligation continued, it was the legitimate subject of contract between the parties. The grantee in the deed could have discharged the obligation by performing specifically, or she could respond in damages for failure to perform. It necessarily follows that it was competent for the parties in interest, at any future time,—at least within the period of limitations,—to agree upon a mode of performance or upon a substitution of a new consideration for the old. If the consideration originally agreed upon was of such a nature that it could not be proved by parol evidence, because of the statute of frauds, it was at all times competent for the grantee to make a written acknowledgment thereof, and thereby to take it out of the statute of frauds. It was just as competent for her, by the same writing, to promise performance. Taking, *first,* the recital of consideration in Exhibit A, and, *second,* the recital of consideration in Exhibit C, they respond to each other. The agreement set forth in Exhibit C could reasonably have been the very understanding which constituted the consideration for Exhibit A. If it be assumed that such agreement could not have been enforced while it rested in parol, for the purpose of present enforcement it has ceased to rest in parol. For the purpose of an existing obligation such as would constitute a good consideration, the grantee of the deed was not bound to insist upon the statute of frauds as a rule of evidence. She could waive it at any time, either in court or out of it. Assum-

ing that the parol agreement was within the statute of frauds, as defined in Code Section 4625, it was still open to the benefi ciary of it to enforce it by action, in the absence of a denial in the answer of the defendant. Code Section 4627. Plaintiff could require such denial to be made under oath, by a verification of his own petition. Moreover, in the event of action, he could call the defendant as a witness, and prove the agreement by her oral evidence. Code Section 4628. That is to say, under our statute of frauds, a party who relies upon the statute of frauds as his sole protection against his parol agreement which, in truth, existed, faces the alternative of perjury.

If, therefore, we find that the recital of consideration in Exhibit A implies an agreement of some kind for a conveyance of property or property right in some amount, the obligation to perform such agreement is a sufficient consideration to support a future contract between the same parties, whether within or without the statute of frauds. *Daily v. Minnick*, 117 Iowa 563, 568, and authorities therein cited. By this discussion we are not holding that such a parol agreement would be within the statute of frauds, nor do we stop to consider the question of part performance, as taking the same out of the statute. That the conveyance of property is a sufficient consideration for a promise by the grantee to will the same property to the grantor, if the grantor survive him, and to a third party, if otherwise, and that such consideration may be enforced after the death of the grantee, is well settled, under our cases. *Mueller v. Batcheler*, 131 Iowa 650, 652. Not only do Exhibit A and Exhibit C in their recitals respond to each other as mutual considerations, but the fair inferences which arise out of the conceded facts surrounding the transactions strongly point the same way. At the time of his father's death, the son, Ed, was 26 years old. He had been married three years. By the death of his father, he had become the owner by inheritance of $40,000 worth of property. By the July, 1903, deed, he conveyed it all to his mother, except a one-half interest in the hotel equipment. At the time of its execution, there was no discussion of it, nor was the deed even read. It was signed and acknowledged immediately. The affectionate relations between the members of this little family justified a high degree of mutual confidence. The

inference arises naturally that there was *some* understanding between mother and son, antecedent to this conveyance, and that the understanding was mutually just, as between the parties. The arrangement could naturally defer to the present management and control of the property by the mother. It is hardly conceivable that no account should be taken of the future right and welfare of the son, whose expectancy of life was greatly in excess of that of his mother. It is suggested by defendants that he expected to ultimately *inherit* the property. That, however, only raises the inference that he expected the property to come back to him after his mother's death. By the same inference, such was the mutual understanding of the parties. This is the very understanding that is incorporated in Exhibit C. True, provision is made therein also for the daughter-in-law, in case her husband should predecease his mother. But if the mother could have executed a valid contract in January, 1908, which secured to the son succession to her estate, her contract was no less valid because she extended the security to the daughter-in-law as well. Moreover, the same inference would fairly arise in favor of the daughter-in-law, that her just interests were provided for in reaching the understanding which culminated in the sweeping conveyance. We deem it clear, therefore, that, upon this record, the defendants have not proved that the conveyance Exhibit A was a deed of gift. On the contrary, the recitals of such deed and the mutual admissions contained in Exhibit C, together with the inference fairly arising out of the facts surrounding the parties, are abundant affirmative proof that such conveyance was made for a consideration, and that such consideration consisted of a promise of some kind by the mother, to be performed in the future; and that such promise did purport in some manner to secure to one or both of the grantors the reversion or succession of the conveyed estate after her death. Exhibit C is not only an agreement to so secure such succession, but it amounts to a written admission, in substance, that such was the consideration for the original conveyance.

We necessarily hold, therefore, that Exhibit C is not wanting in a good consideration.

II. In the foregoing discussion, we have given no detailed

consideration to Exhibit B. The question naturally arises whether Exhibit B, which was contemporaneous with Exhibit A, could be deemed a sufficient consideration there-

4. CONTRACTS: consideration: performance.

for. This contract does not, in terms, refer to Exhibit A. It is not, in its terms, responsive to the recital of consideration in Exhibit A. It is consistent with Exhibit A, and in a sense confirmatory thereof. Exhibit A conveyed all the property except the hotel equipment. The mother and son were the joint owners of the hotel equipment, one third to the mother and two thirds to the son. All the provisions of this contract save one are beneficial to the mother alone. Under it she takes one half the hotel equipment, instead of one third, and takes all the proceeds of the Frazier contract, which amounted, under the evidence, to a considerable sum. No benefits are provided therein for the son. The one apparent burden assumed by the mother is the assumption of indebtedness. The evidence shows that there was none. Exhibit C, by its recitals, is an admission that the son had not received the consideration either for Exhibit A or for Exhibit B. It purports, in effect, to be the consideration for both of them.

III. A further point is made by the defendants that Exhibit C is nugatory because it is wholly testamentary, in that it passes no present interest in any property. This contention is predicated upon the verbiage of the contract, in

5. CONTRACTS: construction: contractual (?) or testamentary (?)

that it provides that the beneficiary shall "inherit," and in that the estate to be thus inherited is described as that of which the promisor "may die seized." Special emphasis is laid upon the provision that neither beneficiary shall have any right or claim of any kind to any part of the property during the lifetime of the mother, and that "the same is to remain the property of Ella J. Manchester absolutely during her lifetime." The argument for defendants is predicated upon the basic proposition that the distinction between a testamentary and a contractual instrument is that, in the former, no present interest in the property passes; whereas, in the latter, a present interest does pass, even though its enjoyment be postponed. This general proposition is sustained by our following cases: *Burlington University v. Barrett,* 22 Iowa 60; *Leaver v. Gauss,* 62 Iowa 314;

*Tuttle v. Raish,* 116 Iowa 331; *Wilson v. Carter,* 132 Iowa 442; *Ransom v. Pottawattamie County,* 168 Iowa 570; *In re Estate of Bybee,* 179 Iowa 1089.

In *Leaver v. Gauss,* supra, a purported deed was held to be testamentary, and therefore nugatory, because of a provision therein that the grantee should have no interest in the said premises as long as the grantors lived. This case has been followed substantially in some of the later cases above cited. The question thus raised is one which has furnished to this court abundant vexation. Concededly, the polar star of construction of all instruments, testamentary or contractual, is the real intent of the parties, as it shall be gathered from the language of the instrument as a whole, in the light of the circumstances surrounding the making. This means that *some* meaning shall be given, if possible, to all parts of an instrument. One trouble with the holding in the *Leaver* case was that it concentrated emphasis upon *one* provision of the instrument, and made it controlling of the whole. In obedience to it, in the course of years, this court was driven logically to a compulsory disregard of the manifest intent of the instrument *as a whole,* because of the presence of this objectionable provision which had received such imperative and controlling significance in the *Leaver* case. It is sufficient, perhaps, here that we refer to *Shaull v. Shaull,* 182 Iowa 770, wherein we established a correction line. In lieu of a rediscussion here, we may note that two opinions were filed in that case. The first was by a divided court, and adhered to the lead of the *Leaver* case. *Shaull v. Shaull,* 182 Iowa 770. On rehearing, we reversed our position, and sustained the instrument as a deed, in accord with the evident intention of the grantors. Our latter holding is in accord with the undoubted weight of reasoning and authority. The reasons for the one holding or the other are fully gone into, pro and con, in the two opinions referred to, and we will not repeat them. In *Leonard v. Wren,* 184 Iowa 1339, we sustained an instrument as not testamentary, though it contained substantially the very provision contained in the *Leaver* case. The effect of our later holding is that such a clause is capable of being construed as having reference to present possession, and not to an interest in the title. Such a construction leaves the court free to give some meaning to all parts

of the instrument, without construing one particular expression as destructive of the whole. And so in the case before us, construing the instrument in its entirety, in the light of the circumstances surrounding its execution, the real intent of the parties is not involved in doubt. Granted even that no present interest passed thereby in any particular property, this would only put the contract in that class of contracts wherein estates are bargained for, and which are performable only after the death of the grantor, and not before. When it is considered that we have for years sustained and enforced contracts which passed no present interest in any particular property, but which provided for the passing of the estate of the grantor to the beneficiary of the contract, it becomes evident that the broad proposition relied on by defendants as a distinction between the testamentary and the contractual is not quite complete. That is to say, an instrument may be contractual and enforcible as such after the death of the promisor or grantor, even though it pass no present interest in any particular property, but does purport to carry the remnant of grantor's estate, whatever it may be at the time of his death.

As applied to the contract Exhibit C, the rights saved to the mother, Ella Manchester, during her lifetime were quite analogous to a life estate, with full power of sale. If Ella Manchester had sold some of her property, and if the plaintiff herein were making claim to such property against the purchaser, a very different question would be presented from that which is actually involved herein. It might well be claimed in such a contest that no present interest passed to the plaintiff herein in any particular property during the lifetime of her mother-in-law, but her rights were confined to such estate, or the two thirds thereof, as the mother-in-law might leave at her death, be it much or little.

Throughout this discussion we have treated the contract Exhibit C as executory. We do not necessarily hold it to be such. If it could properly be regarded as an executed contract, it would make the position of the defendants more difficult, and especially so on the question of consideration. If it were to be deemed an executed contract, it would be sufficient as a completed gift, regardless of consideration. We do not undertake

to pass upon that question. Treating it as an executory contract, we see no fair reason why it should not be recognized and given effect according to its terms. It was undoubtedly understood by the parties thereto. They had a mutual purpose in its making. It was not only executed, but it was acknowledged and recorded. It was never questioned during their lifetime. It is highly equitable in its provisions. Without it, the provisions of Exhibits A and B were manifestly unconscionable. If they had been attacked, it is hardly conceivable that they could have been successfully defended, except by some showing of consideration. Though it be true that a completed gift is entitled to the same protection of the court as any other transaction, yet a gift of substantially all the property of the giver is so unusual and extraordinary as to call for great scrutiny into the circumstances, and to invite adverse inferences from doubtful explanation. Exhibit C furnishes the explanation and the consideration herein. In reliance upon it, the son and daughter-in-law affectionately acquiesced in Exhibits A and B. The mother acquiesced in Exhibit C throughout her life. Not only that, Exhibit C became the buttress of Exhibits A and B,— their adequate protection against possible attack.

Needless to pursue further this feature of the case. In *Leonard v. Wren,* supra, we said that, in the *Shaull* case, we had receded from the position taken in previous cases upon the question then before us. We ought, perhaps, to have been more definite in our reference to such previous cases, and we ought, perhaps, to say now that the effect of the *Shaull* case was to overrule the *Leaver* case, in so far as it made the *one* proviso in the deed under consideration controlling of the *whole,* on the question of intent. On that question, the *Shaull* case controls all our previous cases.

IV. One argument put forward by appellee for the testamentary character of Exhibit C is based upon the use of the word "inherit." That the word is inaccurately used must be conceded. Such use, however, does not tend to confer a testamentary character upon the instrument. It would be just as inaccurate in a will as in a contract. The real significance of the inaccuracy is that it tends to nullify the contract as meaningless. Such inaccuracies, however, are always subject to in-

quiry as to whether the word thus inaccurately used in its techni-
cal sense has a popular meaning which differs from the technical
meaning. If it would nullify the contract to give to the word
its technical legal meaning, and if it will save the contract
to give to it its popular meaning, then the court will adopt the
popular meaning, provided it can be said, in the light of the
whole instrument, that such was its real intent. That the word
"inherit" has a popular use which is the equivalent of "to
take" or "to receive" must be readily recognized; and that it
was used in that sense in this instrument is not fairly open to
debate. *Kohl v. Frederick*, 115 Iowa 517, 520. Likewise, in
this connection, the use of the word "seized" is pointed out, and
is relied on as being inconsistent with any theory of present in-
terest or right under the contract in the appellant. The use of
this word in this connection is not so inaccurate. One of its
definitions is "possession of." At least, popular use permits
such a definition, and what we have just said concerning the
word "inherit" is equally applicable here. *In re Estate of
Miller*, 142 Iowa 563, 565, 566.

V. Some contention is put forward in argument to the
effect, in substance, that the mother, Ella Manchester, had, in
her lifetime, substantially anticipated the performance of the
provisions of Exhibit C or perhaps the considerations for Ex-
hibits A and B, and that she intended the same as a full per-
formance of her obligation. The significance of this argument,
we take it, is that this conduct on her part reflected her purpose
to repudiate further obligation. If the premise had value to
the appellee, we do not find it sustained by the record. After
the death of the son, the mother did formally convey to the
daughter-in-law a one-half interest in the hotel equipment. This
only confirmed the title which the daughter-in-law already held
under the will of her late husband. It removed any possible
cloud upon it, and perhaps saved administration. The mother
also conveyed to the daughter-in-law an undivided one-half
interest in the new home which they occupied. The evidence is
undisputed that the ground upon which this new home was built
was acquired and paid for with the partnership funds arising
out of the operation of the hotel, and that the home was built
in like manner by the expenditure of partnership funds. The

title was in the name of the mother. Counsel for appellee concede that she held this property in resulting trust. Her deed of a half interest to the daughter-in-law had no other effect than to recognize such resulting trust, and again to confirm in the daughter-in-law the title which she had already acquired under the will of her husband. These are the transfers of property which are alleged to have been made to the daughter-in-law. They are of no significance whatever on the question of right as between the parties under Exhibit C. Still less significance can be given to the fact that the daughter-in-law received the life insurance which her husband had provided for her. Some question is made in the record as to whether the plaintiff is barred from prosecuting this suit by reason of the provision made for her in the will of her mother-in-law, and the fact that she had made no rejection of it. We see nothing in that contention. What effect the prosecution of this suit may have upon her right to take the legacy, or any part of it, is a question which was not passed upon by the trial court, and for that reason we shall not undertake to pass upon it. It is, accordingly, reserved from the adjudication, for whatever there may be in it. The mother was entitled to will one third of the property. The record indicates that she has willed more than one third of the property actually left by her at the time of her death. Whether the amount of her legacies was more than one third of the amount of her property at the time she made her will is a question we shall not determine. What effect it may have upon the legacy to the plaintiff that the total legacies exceed one third of the property is a question which we will not prejudge. These questions are all reserved from the adjudication. The ultimate propositions that we hold are:

1.    That the defendants have not shown a want of consideration as to Exhibit C.

2.    That Exhibit C is contractual, and not testamentary.

3.    That Exhibit C should be given effect according to its terms, and that the plaintiff is entitled thereunder to an undivided two thirds of the estate.

For this reason, the decree entered below must be and is—
*Reversed.*

WEAVER, PRESTON, and DE GRAFF, JJ., concur.