CLAYTON COUNTY et al., Appellees, v. FRED THEIN et al., Appellants.

**CONTRACTS:** Construction—Conclusiveness of Conditions. Distinct contract provisions to the effect that a highway between two named points shall be located on either of two clearly specified routes cannot be so construed as to justify a departure from both of said

routes, nothing otherwise appearing in said contract which justifies such construction.

Headnote 1:  13 C. J. p. 525.

*Appeal from Clayton District Court.*—H. E. TAYLOR, Judge.

NOVEMBER 22, 1927.

Action to establish highway over appellants' land. From the court's decree confirming the engineer's report locating the same the appeal was taken.—*Affirmed in part; reversed in part.*

*A. M. Cloud, George S. Banta,* and *E. H. Estey,* for appellants.

*G. W. Hunt,* County Attorney, and *D. D. Murphy & Son,* for appellees.

KINDIG, J.—Primarily, there is here involved the question of whether or not the engineer adhered to the location of the road provided in the stipulation entered into by the parties and hereinafter set forth. Before directing attention to this specific point, it will be useful to consider the history of the transaction. Accordingly, we note that, September 24, 1924, the appellees, as plaintiffs, filed their petition, alleging that in 1854 a public thoroughfare, known as "144, O. S.," was created, opened, and traveled over and across the real estate now owned by appellants. Afterward, in 1880, one George Meehan, the then owner, built a barn in the line of said Old Series, telling the public to use the passageway constructed for his accommodation, in place of the original. This the public did, for approximately 40 years, until about the first day of August, 1924, when the appellants, by fence and ditches, obstructed the peaceful use thereof; and the purpose of this action was to enjoin such interference and reaffirm said common right of passage thereover. In answer to this pleading, appellants, as defendants, filed a general denial. Finally, on October 19, 1925, the parties entered into the agreement first above referred to. For convenience, and to avoid confusion, said contract will be divided into two parts.

I. Thought will now be directed to the first portion thereof, reading as follows:

"It is stipulated and agreed by and between the parties that the road known as 'Old Series 144' of the roads of Clayton County, be and the same is established along and in accordance with the following stipulation: That that part of the road which commences at its junction with the road known as the Wayman Hollow Road and continuing from that point to what is known as the Fred Thein barn, shall be established substantially on the line upon which the said road is now traveled."

About this there is no dispute. Concession is made that the engineer filed a report showing a correct survey, and the court followed it exactly in its decree.

II. Controversy arises over the remainder of said written understanding, in words and figures, to wit:

"That the said 'Old Series 144' shall be laid out from the point where the barn belonging to Fred Thein now appears to be on the said '144 O. S.' and continuing thence to the George Borrett land, shall be established either upon the line of the original survey of highways, which appears in Volume one, page 196 of the road records of Clayton County, Iowa, or upon the line of former actual travel of said '144 O. S.' as shown by the indications upon the ground, keeping in mind that the location shall be in such place as will make a practical road for travel purposes, and wherever possible, the same shall be located with reference to inconveniencing as little as possible, the present owner of the land to wit: either Fred Thein or John Scherf.

"It is further agreed that toward the end of this location, that is at about a point known as the Old Joseph Wolf Homestead, that the road is to abandon the line of former actual travel and old survey and is to be located in such way as to remove it from the dangers of being flooded by high water.

"It is agreed that the width of the road as located herein shall be forty feet.

"It is further agreed that said road shall be laid out as near to the bank of the Turkey River as shall be practicable to establish a good serviceable road.

"It is understood that although it is admitted that the barn nearest the river, owned by Fred Thein, is in the Old Survey, it is however agreed that if it is practicable to build the road between said barn and the river without destroying its service-

ability and durability for travel, that it shall then be located between the barn and the river.

"The survey of said road, as per this stipulation, is to be made by County Engineer Ed Hahn assisted by Engineer C. P. Lewellyn of Cedar Rapids, their field notes and plat of the road when filed, are to be confirmed by proper decree of the district court."

Pursuant thereto, said county engineer filed his report, November 24, 1925. Objections were timely made, principally because, after arriving at a point several rods before reaching the Old Joseph Wolf Homestead, the proposed location deviated from the mutually arranged line southward into appellants' field, contrary to said settlement.

Justification is attempted by the appellees on the theory that the engineer's digression is more practical, economical, and avoids the territory subject to river overflows, and that the same is within the purview of the particular segment of said compact reading:

"Keeping in mind that the location shall be in such place as will make a practical road for travel purposes * * *."

While, on the other hand, appellants' reasons for reversal are that the said last phrase must be read in the light of the whole instrument, keeping in mind the purpose and intention of the contractors, in order that each word may be given its correct meaning in relation to the entirety.

Said document embodying the terms of the compromise must govern. We can neither abridge nor amend it. *Stern v. Rainier*, 193 Iowa 665, declares:

"It is not the business of courts to make contracts for parties. It is the function of a court to determine what contract has been made * * *."

At all times the expressed purpose must prevail. As aptly stated in *Manchester v. Loomis*, 191 Iowa 554:

"* * * the polar star of construction of all instruments, testamentary or contractual, is the real intent of the parties, as it shall be gathered from the language of the instrument as a whole, in the light of the circumstances surrounding the making. This means that *some* meaning shall be given, if possible, to all parts of an instrument."

Returning now to the subject of this litigation, it clearly

appears that the direction from the Fred Thein barn shall continue thence to the George Borrett place, "either upon the line of the original survey of highways, which appears in Volume one, page 196 of the road records of Clayton County, Iowa, or upon the line of former actual travel of said '144 O. S.' as shown by the indications upon the ground." So far, there is no license to make any other variation. Two modifications were allowed, the one "keeping in mind that the location shall be in such place as will make a practical road for travel purposes," and the other, "wherever possible, the same shall be located with reference to inconveniencing as little as possible, the present owner of the land." Both exceptions limited the engineer in selecting "the line of the original survey of highways," or "the line of former actual travel." No other leeway is granted. Discretion was not placed in the free and unhampered judgment of the engineer, but rather, it was confined within the boundaries of "the original survey of highways" and "the line of former actual travel." An additional reservation is found in this sentence:

"It is further agreed that toward the end of this location, that is at about a point known as the Old Joseph Wolf Homestead, that the road is to abandon the line of former actual travel and old survey and is to be located in such way as to remove it from the dangers of being flooded by high water."

Never before was permission given "to abandon the line of former actual travel and old survey." Here, the new and contemplated course emerges from both abandoned ways, and the engineer is allowed to do what to him seems best in running his survey over such places as to evade flood dangers, with this admonition:

"That said road shall be laid out as near the bank of the Turkey River as shall be practicable to establish a good serviceable road."

However, the agreement was violated, not after passing, but prior to arriving at, the "Old Joseph Wolf Homestead." In other words, the engineer left "144 Old Series and the line of former actual travel" previous to reaching the landmark which, under the agreement, fixed the spot where for the first time the surveyor could diverge from "Old Series 144 and the line of former actual travel" and go where his judgment sug-

gested, "keeping in mind that the location shall be in such place as will make a practical road for travel purposes," and be as near the river as possible. On this phase of the issues the district court was in error.

Wherefore, that part of the judgment and decree of the district court is affirmed which fixes said highway on the following course, to wit:

"Starting at a wooden stake driven in the center of the road midway between two concrete posts set 40 feet apart, 600 feet from a hub driven in center of the juncture of the Wayman Hollow road, thence with an angle to the right 6 degrees 451.5 feet, thence with an angle to the right 9 degrees 40 minutes 1,048.5 feet, thence with an angle to the right 14 degrees 18 minutes 1,100 feet, thence with an angle to the right 33 degrees 25 minutes 330.4 feet, thence with an angle to the right 23 degrees 45 minutes 903.5 feet, thence with an angle to the right 14 degrees 10 minutes 433.5 feet,"—and the remainder and rest of said ruling and action of said court is reversed, and the cause remanded, with directions that said engineers, or their successors, if any to be appointed by the court, shall resurvey said unestablished portion of said road in accordance with said stipulation contract, and when so done, the same shall be adjudged the permanent thoroughfare herein contemplated.— *Affirmed in part; reversed in part.*

EVANS, C. J., and STEVENS, FAVILLE, and WAGNER, JJ., concur.