(No. 17030.—Reversed and remanded.)
MINNIE OARD *et al.* Appellees, *vs.* LOIS DOLAN, Appellant.

*Opinion filed February 18, 1926—Rehearing denied April 8, 1926.*

1. DEEDS—*when petition for insanity hearing is not competent in suit to set aside deed.* In a suit to set aside a deed on the ground of mental incapacity and undue influence, a petition filed in the county court praying for an inquiry into the grantor's alleged insanity and containing interrogations and the report of commissioners, signed by physicians, is not competent evidence where there was no judgment of the court in the insanity proceeding.

2. SAME—*effect of existence of a fiduciary relation—presumption and burden of proof.* The existence of a fiduciary relation merely casts upon the person occupying that relation and claiming the benefit of the contract the burden of showing good faith on his part, that no unfairness was used, that the transaction was equitable and just, that he acted in good faith and did not abuse or betray the confidence reposed in him; and the strength of the presumption of undue influence arising from the relation depends upon the circumstances of each case.

3. SAME—*attorney may testify as to circumstances of transaction in suit to set aside deed.* In a suit by heirs to set aside, on the ground of undue influence, a deed executed by their ancestor, the attorney who attended to the execution of the deed may testify to the circumstances of the transaction, and statements made by the grantor in the presence of the attorney and the grantee are not of such confidential character as shall not be disclosed by the attorney.

4. SAME—*when deed is not invalid as being testamentary—condition.* A deed which has been actually delivered, though it states on its face that it is not to take effect in possession until after the grantor's death, is not subject to the objection that it is a testamentary disposition of property but will be sustained as a present grant of a future estate, even though the grantee, by a contemporaneous agreement to which the deed refers, is required to perform certain conditions and upon a failure to do so is to re-convey to the grantor.

APPEAL from the Circuit Court of Kankakee county; the Hon. A. W. DESELM, Judge, presiding.

MILLER & STREETER, and CUTTING, MOORE & SIDLEY, for appellant.

GRANGER, NOURIE & GRANGER, and BURNS & BURNS, for appellees.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

John C. Fina, a bachelor, forty-two years old, died on December 12, 1922, leaving as his heirs an aunt and two uncles, the sister and brothers of his mother, and five cousins, the children of a deceased brother of his mother. He had owned in his lifetime a parcel of real estate in the city of Kankakee, which he conveyed on October 10, 1922, to Lois Dolan, reserving a life estate to himself. His aunt, his uncles and his cousins filed a bill to the October term, 1923, of the circuit court of Kankakee county to set aside this conveyance on the ground that the grantor did not have sufficient mental capacity to make the deed and that it was obtained by the undue influence of the grantee, who occupied a confidential relation toward the grantor. The bill alleged that Fina entertained a bitter hatred for the complainants, especially his aunt, and that he admired and loved Lois Dolan. The bill was answered, the cause was heard by the chancellor upon depositions and the testimony of witnesses given in open court, and a decree was rendered finding that the deed purported to represent a sale; that the inadequacy of the consideration was unconscionable; that the transaction was unfair; that the deed was procured by Lois Dolan by abuse of the confidential relation between her and the grantor, and decreeing that the deed was null and void and that it be set aside and canceled. Lois Dolan appeals from that decree.

The principal ground of error complained of is that the decree is contrary to the evidence. The property involved is situated in the center of the business district of the city of Kankakee. It is improved by a three-story-and-basement brick building, the lower story and basement being leased

and occupied for business purposes and the second and third stories being flats, the second story having been occupied by the parents of John C. Fina as their home from the time of his birth and by him after their death. The court found its value to be $38,000. Peter Fina, John's father, conducted a saloon in the first story when John was born. Peter died about 1912, before his wife, Louisa, and after that time Louisa and John occupied the second story of the building as their home, Louisa owning two-thirds and John one-third. The saloon continued to be conducted in the first story by tenants until traffic in intoxicating liquors was prohibited by law. John learned to be a candy-maker, and was also employed in a drug store in Chicago when he was between the ages of sixteen and twenty-one. He became addicted to the use of intoxicating liquors to excess, and once or twice had gone to the Keeley Institute, at Dwight, to be cured of the habit. For a number of years before his death he had been afflicted with tuberculosis, which had reached an advanced stage in 1919. In that year the appellant, Lois Dolan, who was a woman about thirty-five years old, a practical nurse, unmarried, and not related to John or his mother, was employed to care for him. Soon after such employment she went with him for the benefit of his health to Denver, Colorado, where she lived with him, taking care of him as a nurse and performing the duties of a housekeeper. While they were there they engaged in the candy business under the name of Fina & Dolan. Besides the manufacture of candy they also conducted a soda fountain. He was sick quite frequently, and sometimes she would be at the store and at other times the store would be locked up while she stayed at home nursing him. They returned to Kankakee in 1920 and afterward lived with his mother, Louisa, in the second story of the premises in controversy until her death, on September 4, 1922. After that event they lived in the same premises until John's death. He was in an advanced and incurable

stage of tuberculosis and was afflicted with other ailments. In December before his mother's death she and John had executed a joint and reciprocal will, each devising to the other the residue of his or her estate, but with a provision as to Louisa that she "shall take only a life estate during her natural life in the estate of John C. Fina, if she should survive him, and upon her subsequent death the estate of the said John C. Fina shall become the property in fee simple absolute of Lois Dolan, who has been the faithful companion and nurse of the said John C. Fina for several years past." This will was drawn by Walter C. Schneider, a lawyer, who had known John all his life and who was employed by John after his mother's death in connection with her estate. He was called to the house on September 12, 1922, and John inquired of him whether he ought to make a new will since his mother's death, and Schneider told him he did not think it was necessary. John then said that he wanted to do something; that Miss Dolan had taken care of him for a long time; that he had not paid her for a considerable time and never had paid her what she was worth; that now he was entirely dependent on her, his relatives took no interest in him, and one of them had not even come to his mother's funeral. He said he ought to do something, because he wanted Miss Dolan to have his property, and asked if he could not give her a deed. Schneider told him he could do that and reserve a life estate, if he wished. John then directed Schneider to draw a deed of the Court street property, in which he lived, to Miss Dolan. Miss Dolan and John were the only persons present. Schneider had no recollection as to whether Miss Dolan was in the room when John was talking about the deed or not, but she was about the place and came back and forth. Some days afterward Schneider, having drawn the deed, took it over to John and read it over to him, or John looked it over and expressed his satisfaction with it. Miss Dolan was present and said that she did not think she

ought to take a deed of that kind from him. John asked
why, and she said something might happen to her. He an-
swered, "Now, you have agreed to stay with me and I want
you to have this," and to her statement "something might
happen to me," he said, "Then your will will take care of
it." She said: "I might not die, but I might not be able
to take care of you; I might lose my mind, and something
ought to be arranged, if you want to deed it to me, so that
you will be protected if anything like that happens." The
three discussed it together, and Schneider suggested that a
contract be drawn to cover these things. John told him to
draw such a contract. A few days later Schneider was
called again. He took the contract over and read it to John
and Miss Dolan. John raised a question whether the de-
scription included a certain strip four feet wide in connec-
tion with the rest of the premises, and Schneider agreed to
look it up. He took the deed away, drew it over and later
brought the new deed back, John signed it, Schneider took
the acknowledgment, John handed it to Miss Dolan and
she handed it to Schneider, asking him to have it recorded,
and this was done. The deed purports to be in consideration
of one dollar and other good and valuable considerations,
as recited in a contemporaneous agreement. This agree-
ment was executed at the same time as the deed by John C.
Fina, party of the first part, and Lois Dolan, party of the
second part, and recited that whereas the second party had
for several years been the faithful nurse and companion of
the first party and had also nursed and assisted his mother
during her last illness, and the first party was duly appre-
ciative of her services and devotion and desired to recom-
pense her and had executed to her a deed of the property
in Kankakee, reserving a life estate to himself, and that it
was the purpose and agreement of the parties that the deed
should be for the benefit of the second party only if she
should survive the first party and if she should during the
remainder of the first party's life continue to remain with

him and care for and nurse him, therefore it was agreed between the parties that the future personal care and nursing of the first party by the second party was a substantial part of the consideration for the deed; that if the second party should remain with the first party during the remainder of his life and faithfully care for and nurse him and attend to his business and other affairs, then the deed and conveyance should become absolute after his death; should she, however, willfully leave and desert him and fail to care for and nurse him, then she covenanted and agreed that she would, or in case of her death her heirs, devisees, executors, administrators and assigns should, re-convey said property to the first party within ten days of a written demand made on them or any of them; and she further agreed and covenanted that she would duly execute and maintain unrevoked a last will and testament, whereby she should devise said property to the first party in case he should survive her; and it was further agreed that if the second party should at any time during the joint lives of the parties become physically or mentally unable to continue to remain with the first party to care for and nurse him then the deed should become inoperative, and she, her conservator or other legal representative, should, within ten days of a written demand made on her or them, re-convey said property to the first party, or, at his election, join with him in executing and delivering a mortgage or trust deed for such sum or sums as the first party might designate. It was further agreed that during the joint lives of the parties and while the present relation of companion and nurse and patient continued, the second party would, when called upon by the first party, and conditions and needs warrant, join with the first party in the execution and delivery of mortgages or trust deeds required to raise money necessary for the comfort and support of the first party.

The court made no finding that John C. Fina did not have sufficient mental capacity to make the deed and there

was no evidence of any value on which to base such find-
ing. There was evidence tending to show that for many
years Fina drank intoxicating liquors to excess; that he was
disagreeable and was violent, profane and abusive in his lan-
guage to his mother and in his references to his relatives
when intoxicated. There is evidence that he sometimes took
white tablets or white powders, but there is no evidence as
to what they were and the record contains no evidence jus-
tifying any conclusion that he was a drug addict. His aunt,
Mrs. Oard, testified that she thought his behavior in the
home was unusual; that his actions were queer—silly;
that he would be sitting alone and suddenly burst out laugh-
ing and act as though he was silly; that she would ask
him what was the matter and he would just giggle. Mrs.
Emma Seyfarth, the mother of the cousins who were com-
plainants, testified to similar conduct. Mrs. Cora B. Sey-
farth, the wife of one of the living uncles, testified she saw
something irrational or unusual in John's behavior more
than once. He behaved as if he did not just know what
he was doing; sort of making his lips go and looking out
of the window; just queer. She thought he was queer
when he would just sit and mutter to himself. The last
few times she saw him she did not think he was natural.
Neither of these witnesses, nor any other, expressed the
opinion that he was not of sound mind or was mentally in-
competent. No other witness ever observed anything out
of the ordinary with his mind and all who were asked the
question expressed the opinion that he was of sound mind.

In January, 1913, Louisa Fina filed in the county court
a petition alleging that she believed John Fina was insane
or suffering under mental derangement and was unsafe to
be at large and praying for an inquiry into his alleged in-
sanity. This petition, together with a summons and sher-
iff's return of service, the interrogations and report of com-
missioners, signed by two physicians, representing "that said
John Fina is suffering from alcoholism, from which we con-

clude that he is insane and respectfully recommend that he be paroled to the custody of his friends," was offered in evidence. The physicians' report was not competent evidence in this case. There was no judgment of the court. The evidence was objected to by the appellant. It was not competent and the objection should have been sustained. *Lewandowski* v. *Zuzak,* 305 Ill. 612.

It may be conceded that the appellant sustained a fiduciary relation to John C. Fina and that he reposed confidence in her. After they returned from Denver his condition was known to be incurable. He was confined to the house most of the time. He could not go up and down stairs without assistance. He required constant attention and care, but there is no evidence worthy of consideration that his mind was affected. He was obliged to rely upon the appellant to go to the bank with checks, to get such papers as he needed, to attend to the domestic purchases, and to do for him the many things which he was physically unable to do for himself. His account at the bank was kept in his own name until about a month before his death, and there is no evidence that anybody but himself drew, or was authorized to draw, checks on that account. Three or four weeks after the delivery of the deed the bank account was changed to a joint account, on which checks could be drawn either by John or Miss Dolan. She had the opportunity to influence him, but the evidence does not justify the conclusion that hers was the controlling mind. He had very little business to transact, but such as it was he transacted himself, sometimes consulting and advising with her but acting upon his own conclusions. There is no evidence that the execution of the deed and the contemporaneous agreement was procured by the appellant by the abuse of the confidential relation between her and John, but the existence of the confidential relation, the opportunity for its abuse and the beneficial character of the instruments imposed upon her the burden of showing that the instruments

were entered into with full knowledge of their nature and effect and because of the deliberate and voluntary desire of the maker, and that it is the free expression of his wish and not of hers.

The evidence shows that John C. Fina had no particular affection for his relatives, and it is alleged in the bill that he entertained a bitter hatred for them. It is also alleged in the bill that he admired and loved the appellant, and this averment is sustained by the evidence. The existence of a fiduciary relation merely casts upon the person occupying that relation the burden of showing good faith on his part, that no unfairness was used and that the transaction was equitable and just between the parties. The party claiming the benefit of the contract must show that he acted in perfect good faith and did not abuse or betray the confidence reposed in him. The strength of the presumption and the amount of proof required to overcome it must depend upon the circumstances of each case. The presumption in this case arises only out of the existence of the relation. No evidence is shown of any actual attempt to influence the making of the deed,—of any act or word on the part of the appellant suggesting its execution. The first suggestion of John's intention that his property should go to the appellant is found in the joint will executed by himself and his mother in December, 1921, which was written by the lawyer, Schneider, who wrote the deed in controversy and the contemporaneous agreement. In view of his feeling toward his relatives and his love for the appellant that will was such as would naturally be expected. His mother, by joining in the will, indicated her approval of John's desire to make the appellant the devisee of his property after his mother's death. John, stricken with a fatal disease, no doubt anticipated that his mother would survive him, and when, contrary to his expectation, he became the survivor, he called upon his attorney, who had prepared the will, for information as to the effect which the changed

circumstances would have on the disposition of his property made by his will, and he was advised that in his attorney's judgment it was not necessary to make a new will. He then asked if he could not make the appellant a deed, and on being advised that he could do so and reserve a life estate to himself he directed the deed to be drawn. The lawyer made two more visits before the deed was finally executed, at which its execution was discussed, the appellant insisting that the deed ought not to be made to her as an outright conveyance of the title without limiting it so that in case of her death or inability to care for the grantor the beneficial interest in the property should be secured to him. She was not a competent witness to testify against the appellees, claiming as heirs of the grantor, so no evidence could be introduced as to what took place between her and the grantor alone. The testimony of the attorney, however, is inconsistent with the supposition that the execution of the deed and the contemporaneous agreement was anything but the voluntary, deliberate and intelligent act of the grantor and expressed his wish.

No reason is apparent why Schneider's testimony should not be believed, but the appellees contend that it was incompetent because he was the attorney of John C. Fina, and therefore could not disclose the confidential information about his client's affairs obtained through that relation. There is no basis for this contention. The conversations and circumstances testified to were not confidential. They took place in the presence of the grantee. Statements made by a grantor in the presence of the opposite party and his attorney are not of such confidential character as the client may insist shall not be disclosed by the attorney and solicitor. *Scott* v. *Aultman Co.* 211 Ill. 612; *Lynn* v. *Lyerle,* 113 id. 128.

The appellees contend that the deed was not intended to take effect at the time of its execution and delivery but only upon the performance of the conditions expressed in

the contemporaneous agreement; that it was testamentary in character but not executed in accordance with the requirements of the statute on wills. These claims are not sustained by the instruments themselves. The delivery of the deed immediately upon its execution was unconditional, the grantor retained no right of control over it, and the evidence all indicates that he intended it to take effect at once as a conveyance of title to take effect in possession after his death according to its terms, including the contemporaneous agreement, which provided that it should be considered and construed with and as a part of the deed. Under our law a conveyance of real estate not to take effect in possession until after the death of the grantor is good and valid. (*Shackelton* v. *Sebree*, 86 Ill. 616; *Noble* v. *Fickes*, 230 id. 594; *Hathaway* v. *Cook*, 258 id. 92.) The fact that the grantee by the terms of these instruments was not to come into the possession and enjoyment of her estate until after the death of the grantor did not make the instruments testamentary. A will is by its nature ambulatory during the life of the testator. A deed which has been actually delivered, though it states on its face that it is not to take effect until after the grantor's death, is not subject to the objection that it is a testamentary disposition of property but will be sustained as a present grant of a future estate. (*Harshbarger* v. *Carroll*, 163 Ill. 636; *Hudson* v. *Hudson*, 287 id. 286; *Bullard* v. *Suedmeier*, 291 id. 400; *Patterson* v. *McClenathan*, 296 id. 475; *Heiligenstein* v. *Schlotterbeck*, 300 id. 206.) By the delivery of the deed the title to the remainder, after the life estate reserved to Fina, was vested in the grantee subject to her obligation to comply with the requirements of the contemporaneous agreement and upon failure to do so to re-convey to the grantor.

The evidence is convincing that the deed in question and the contemporaneous agreement were the voluntary acts of John C. Fina, the natural result of his affection for the

appellant and his appreciation of her services and of his lack of affection for his relatives; that the acts were fairly done without any undue influence.

The decree is reversed and the cause remanded to the circuit court, with directions to dismiss the bill.

*Reversed and remanded, with directions.*