C. M. KECK, Trustee, Appellee, v. ORVAL MCKINSTRY et al., Appellants.

NOVEMBER 13, 1928.

1122

■■■■■■■■■■■■■■■■

*Bailey & Baldridge, Starr & Jordan,* and *J. C. Calhoun,* for appellants.

*W. M. Keeley* and *Morrison & Morrison,* for appellee.

MORLING, J.—Under date of June 9, 1914, John McKinstry executed two instruments: first, an ordinary warranty deed to his son "Albert McKinstry, his heirs and assigns forever," for the land in controversy; second, a declaration of trust, reciting the execution of the deed as "including all real estate by me owned the same to be hereinafter referred to as the trust fund and be held by the said Albert McKinstry in trust to the uses and benefits of the persons hereinafter named, and according to the provisions hereof, to wit." The uses, in substance, were: 1. To the grantor during his lifetime, reserving to him "the rights of possession, rents and profits, and all the elements, rights and obligations of a life estate in said trust fund during my lifetime." 2. After his death, to pay from the trust fund and income the expenses of the trusteeship and of maintenance. 3. At his death, to pay from the trust fund nominal sums to a daughter and grandchildren named. 4, 5, 6. After grantor's death, to pay to the uses of two named grandchildren and a son such sums, at such times, and in such manner, as the trustee should consider to be for their best interest. (These four uses, Nos. 3, 4, 5, 6, are revoked by the later declaration of trust to be referred to.) 7. To hold for the use of the trustee the trust property "not herein otherwise disposed of or not required to be paid or expended by said trustee in performance of the provisions of this trust as herein stated or as same may be hereafter amended or changed as herein provided and such property so held to his own use shall belong to and be owned by him in fee simple. [This is also revoked.] 8. It is provided that said trustee shall, after my death, administer and rent and manage said trust fund in a careful and proper manner. * * * and said

trustee shall from this time have and hold full title to the property of said trust fund, subject to the life estate reserved and the conditions hereof, and after my death said trustee shall have the power to transfer, assign, sell, loan, invest and in any manner necessary for the purposes of this trust dispose of said property * * * all as he shall consider and deem best and according to his decisions, which shall be final and conclusive * * * 9. It is further provided that I hereby reserve the right and privilege of changing or amending the provisions of this trust agreement by written instruments, either in form of written notice to or demand or request made of the trustee or by testamentary provision, and that I may, in same manner, demand and require of said trustee the conveyance, transfer or delivery to me or to such other person as I may designate, such parts or portions of said trust fund property as I may point out or define, and on such terms and conditions as I shall prescribe.'' 10. Incumbrances and indebtedness to be paid, as far as possible, from personal property owned at time of grantor's death. 11. Trustee is exonerated from giving bond. 12. ''* * * If the death of the trust [trustee?] herein named should occur before my death all the trust fund property shall thereupon be held to or for my use in fee simple and all other uses hereunder shall cease and determine, and jurisdiction of this trust for purposes of transfer of title and ownership in said trust fund property to me shall be in the district court of Washington County, Iowa. At my election in the event of the death of trustee before my death, I reserve the right to appoint or nominate a successor to said trustee, who thereupon shall succeed to the rights of trustee herein named, subject to such conditions and provisions as shall be prescribed by me in the appointment of said successor, and said successor shall thereupon be entitled to claim and demand the delivery of any property constituting said trust fund, and to institute appropriate proceedings for securing the legal title thereto.'' . .

Albert McKinstry signed a writing bearing the same date, June 9, 1914, as follows:

''I hereby acknowledge receipt of the deed conveying the property referred to in the foregoing trust agreement, said real estate to be by me held in trust as therein provided, and I hereby accept the provisions of the foregoing instrument and the obligations of trustee therein created.''

**1124**

.Albert McKinstry died in the lifetime of the grantor, viz., in February, 1921, leaving a son, Orval McKinstry, a minor, for whom the principal argument in behalf of appellants is made by guardian *ad litem*,—leaving also a daughter and widow, defendants and appellants. Under date of April 19, 1921, John McKinstry executed a declaration reciting the deed and declaration of trust to Albert McKinstry of June 9, 1914, and proceeding:

"Pursuant to said trust agreement, and its provisions, I do now hereby name, constitute and appoint C. M. Keck of Washington, Iowa, as the trustee under said trust agreement to succeed the trustee therein named, and hereby invest him with the rights of trustee therein stated and as hereinafter provided and modified. I hereby further confer upon said trustee herein named, or such trustee as may be hereafter named by me or by court having jurisdiction of said trust, the said power and authority to claim and demand the delivery of any and all property constituting said trust fund, and hereby impose upon any such trustee, whether herein named or hereafter appointed by me or by court having jurisdiction, the duty to hold and administer said trust fund and all property thereof, and all property added thereto, in trust to the uses and benefit of the persons hereinafter named, and according to the provisions hereof, to wit."

Specifications following, numbered 1 and 2, are, in substance, the same as Nos: 1 and 2 of the first declaration. "3. Upon my death I hereby direct such trustee to convey or cause to be conveyed to my wife, Emilie McKinstry [second wife] if she then survives, as her own property in fee simple," 80 acres, described, "the same to be in lieu of the provisions in the antenuptial agreement executed on or about the 20th day of September, 1917, between me and said Emilie McKinstry, then Emilie Chmelar, and said conveyance shall be and constitute a performance of the said provisions in said antenuptial agreement * * * In case said real estate above described is not then a part of said trust property, then property of equal value shall be secured to * * * said Emilie McKinstry in lieu thereof, and the trustee shall arrange and cause such delivery and conveyance and select such property observing the wishes of said Emilie McKinstry therein. If said Emilie McKinstry does not survive until such conveyance and delivery is made to her then this use

and provision for her shall be extinguished and void. 4. I further direct such trustee, after my death and after performance of the provisions of the last preceding paragraph to hold and administer all of the other property in said trust fund remaining, together with any and all property that may be added to said trust fund by gift, conveyance, devise, bequest, or otherwise, to and for the use of such children of my present marriage with said Emilie Chmelar McKinstry as shall survive me, for and during the time until twenty-one years from the date of the birth of the youngest of such children who survive me, and to then convey, transfer and deliver the property then constituting said trust fund to the said children of my said present marriage who then survive, share and share alike.''

Specifications 5 and 6 provide for lapse in case of death of any child of present marriage prior to distribution, and if all children of present marriage die before distribution, then the trustee, after the performance of the provisions of Paragraph 3, is required to distribute the trust fund, as then constituted, to John McKinstry's heirs.

By Specification 7, Paragraphs 3 to 7 of the original trust agreement are declared to ''have become ineffective through death of the former trustee, Albert McKinstry, and the same and all provisions of said trust agreement inconsistent with the provisions of this instrument be and the same are hereby cancelled and revoked; but the provisions or parts of said original trust agreement consistent with this instrument be and they are hereby confirmed.'' The provision exonerating trustee from giving bond is revoked, and the district court of Washington County declared to have full jurisdiction of the trust, with authority to appoint succeeding trustee.

This suit is brought by the substituted trustee, Keck, against the widow, daughter, and minor son, Orval, of Albert McKinstry, and against the widow (by second marriage), children and descendants of deceased children of John McKinstry. The defendants include the beneficiaries specifically named in the declarations of trust. The petition sets out the deed to Albert and the two declarations of trust, and prays establishment of title in plaintiff, as trustee, and for quieting, except as to rights held as beneficiaries. The petition asks for directions for the administration of the trust. Albert's widow, Dora, his minor son, Orval,

his daughter, Nettie, one of John's sons by his first marriage, Charley; a daughter, Ena May, John's widow, Emilie, and the two minor sons by the second marriage, John O. and Elliott, and some of his grandchildren, Walter Churchill, Charles Churchill, and Clara Churchill Corbin, defend, and, except Emilie, John O., and Elliott, appeal.

It is the ruling purpose of the courts, in determining the rights of parties to contracts and conveyances, and under wills, to ascertain, and, as far as consistent with rules of law, effectuate, the intention of those executing them. The intentions of the parties to the transactions here involved were put in writings, over their signatures, perfected by delivery, and are plain and undisputed.

The argument in behalf of Orval, minor heir of Albert, may be summarized as follows: That, if it be conceded that the declaration of trust and the deed to Albert McKinstry were made concurrently, and are to be construed together, there is, nevertheless, a repugnancy between the absolute grant of the estate to "Albert McKinstry, his heirs and assigns forever," and the qualifying declaration; that the intent manifested by the granting clause "unto Albert McKinstry, his heirs and assigns forever," to grant a heritable estate in fee simple (particularly in connection with the covenant of warranty), must prevail over any attempt to later qualify it by a modifying provision, either in the deed or in a separate instrument; that the attempt to create a trust, therefore, failed of accomplishment. See *Lewis v. Curnutt*, 130 Iowa 423; *Wood v. Logue*, 167 Iowa 436; *Husted v. Rollins*, 156 Iowa 546; *Yeager v. Farnsworth*, 163 Iowa 537; *Dolan v. Newberry*, 204 Iowa 443.

The parties are in a court of equity, which always assumes to declare, administer, and enforce valid, active trusts according to the legally expressed purpose of the parties. We need not be detained to consider the effect of the conveyance and qualifying provisions in a court of law, called upon to determine the quality and extent of the estate conveyed, according to the rules of the common law. It is quite the usual thing in the creation of a trust in real property, for the truster to convey to the trustee an estate which at common law would vest in the grantee an estate in fee simple. It is the province of a court of equity to seize that estate, whatever it may be at common law, and appropriate it to

the declared trust. Whatever the estate of the trustee may be at common law, it is in equity enlarged or restricted to that which the trustee must have for the purposes of the trust and to execute the powers conferred upon him. 39 Cyc. 207; *Lewis v. Curnutt*, 130 Iowa 423, 432; 26 Ruling Case Law 1258 *et seq.* This is true whether there are or are not words of limitation in the grant. Though the grant to the trustee is to him, "his heirs and assigns forever," and though at law the estate which he thereby derives is heritable, he and those holding under him (without reference here to matters of bona-fide purchasers under the recording laws, estoppel, etc.,) in equity take the legal estate in trust for the owners of the beneficial estate. The estate of the trustee is in equity exactly that required for the exercise of the trust, neither greater nor less, and on the accomplishment of the trust is extinguished, and the whole estate, legal and equitable, vested in the beneficiaries. *Temple v. Ferguson*, 110 Tenn. 84 (72 S. W. 455, 100 Am. St. 791); *Ellis v. Fisher*, 3 Sneed (Tenn.) 231 (65 Am. Dec. 52); 3 Pomeroy's Equity Jurisprudence (4th Ed.), Section 989; 39 Cyc. 207 *et seq.* Albert received the deed and expressly accepted the trust. It necessarily follows that he became trustee, and neither he nor those claiming under him can in equity assert any beneficial interest in hostility to the trust. The legal estate was in Albert in fee simple, and on his death, descended to his heirs, but, nevertheless, in equity, in trust for the beneficiaries of the trust.

The appellants in their joint argument, in the event that Orval's particular position is not maintained, then, in the reverse of that position, contend, as we understand, that the trust agreement with Albert was testamentary only; that the truster, John McKinstry, retained the whole beneficial interest; that, while power to revoke a valid trust may be reserved, in this instance the truster reserved not merely right of revocation, but the right to incumber, to alienate, to appoint a new trustee, to change the terms,— in short, reserved to himself the entire beneficial interest and power of disposal; that he parted with no dominion over the property, and that Albert McKinstry became his mere agent; that the agency was revoked; that the trust merged in the legal estate by the reversion to the truster on the death of Albert; that there are no operative words of conveyance to the plaintiff

in the declaration of trust to him. Appellants rely on *Warsco v. Oshkosh Sav. & Tr. Co.*, 183 Wis. 156 (196 N. W. 829) ; *McEvoy v. Boston Five Cents Sav. Bank*, 201 Mass. 50 (87 N. E. 465). (See Illinois and Massachusetts cases post.) These two cases involved certificates of deposit, the possession of which was placed by the so-called settlor in the so-called trustee. The trustee was required to pay to the truster any of the amount of the deposit at any time. Those cases have no analogy to a conveyance of the legal estate in real property to one in trust for the use of the grantor, during his lifetime, and of other named beneficiaries, and for distribution to them after his death. Here the legal estate in real property was conveyed to Albert McKinstry. It passed a present estate. By their agreement the parties separated the legal and equitable estates. It is not claimed that the power of revocation invalidated the conveyance and declaration of trust, as a trust. It cannot be claimed that the trust was merely passive. Active duties were imposed upon the trustee, for the benefit of beneficiaries other than, as well as including, the truster. It can make no difference that the truster retained the active management of the property during his lifetime, and that the performance of active duties by the trustee was postponed until after the death of the truster, and that performance of the trustee's duties was contingent upon his surviving the truster. The trustee acquired the legal title to the property, and in equity an estate, to the extent that would be necessary to enable him to perform his duties. Manifestly, that estate was in trust. The duties required of Albert McKinstry, whether in law or in equity, were not duties to a principal, a superior, as such, to be performed for and in the name of John McKinstry. The acts of Albert McKinstry in the performance of his duties would not be the acts of John McKinstry. They would be his own acts, and in his own name, as trustee. The arrangement has no semblance, either in name or purpose, of an agency.

Were the deed and declaration of trust testamentary only?

"The essence of a testamentary disposition of property is that it be merely a declaration of the testator's intention as to what shall take place after his death." *Eaton v. Blood*, 201 Iowa 834, 839.

A will operates only on and by reason of the death of the maker. An instrument by which the maker divests himself *in*

*praesenti* of any part of his estate,—which grants an estate or interest *in praesenti*, though possession and enjoyment are post- poned until after the death of the maker,—is not a will. *Shaull v. Shaull*, 182 Iowa 770, and cases post.

John executed to Albert a warranty deed. At law, it con- veyed a heritable estate in fee simple. In equity, it conveyed an estate in trust. By the terms of the instrument, the truster was one of the beneficiaries. The trustee was one of the beneficiaries. The truster's interest as a beneficiary was important. John might call "for the conveyance, transfer or delivery to me or to such other person as I may designate such parts or portions of said trust fund property as I may point out." We do not pause to discuss the question whether the right to conveyance to the truster from the trustee so reserved is inconsistent with, and therefore revoked by, the later declara- tion of trust. Until he exercised that right, the title remained in the trustee, for the purposes of the trust. The trust would remain in force. The efficacy of the grant was not affected. *Haulman v. Haulman,* 164 Iowa 471, 480. If the reserved right was exercised, Albert was required to convey. In that event, truster's title to the reconveyed property would come from the trustee, not in defiance of the trust, or because of title in John undivested, but by virtue of the requirements of the trust. Un- less and until such right to a reconveyance was exercised, the title, for the purposes of the trust, remained in Albert, and the interest of the beneficiaries remained in them. The equitable estate and interest of the beneficiaries other than the truster himself were *in futuro* and defeasible, but they were, notwith- standing, interests created and declared,—presently existing, though defeasible. It may be admitted that the grantee and trustee, Albert McKinstry, and the beneficiaries would have been helpless, as against the grantor's exercise of his reserved right to demand conveyance and to change, amend, or revoke the trust *in toto*. That fact, however, in no wise detracts from the propo- sition that, until the truster did exercise that power, the legal estate was in Albert in trust, and the equitable estate, though defeasible, was in the beneficiaries. Until then, it was an exist- ing trust.

Appellants point to the ninth paragraph of the first declar- ation of trust, reserving the right of amendment and of convey-

ance "by testamentary provision." This was the reservation of a power which, until exercised, could not, for the reasons above set out, neutralize or destroy the title which Albert McKinstry had in trust, or the rights which the beneficiaries under the instrument had in the trust estate. Truster did, on April 19, 1921, the date of the second declaration of trust, execute a will devising his residuary estate to the plaintiff in trust, reciting the deed to Albert as in trust, as provided by trust agreement, and reciting the later declaration of trust, confirming it, and declaring that it should "govern the administration of the trust fund herein bequeathed." It is not claimed, therefore, that the reserved power was exercised in hostility to the trust. The deed and declaration of trust cannot be held to be merely testamentary or a will. *Haulman v. Haulman,* 164 Iowa 471; *Roche v. Brickley,* 254 Mass. 584 (150 N. E. 866); *Shaull v. Shaull,* 182 Iowa 770; *Lewis v. Curnutt,* 130 Iowa 423; *Prindle v. Iowa Soldiers Orphans Home,* 153 Iowa 234; *Oard v. Dolan,* 320 Ill. 371 (151 N. E. 244); *Manchester v. Loomis,* 191 Iowa 554; *Hall v. Hall,* 206 Iowa 1; *Kelly v. Parker,* 181 Ill. 49 (54 N. E. 615); *Linn v. Campbell,* 289 Ill. 347 (124 N. E. 622). Compare *Ransom v. Pottawattamie County,* 168 Iowa 570; *Wilson v. Carter,* 132 Iowa 442.

It is urged that there was no conveyance to the new trustee. Pursuant to the authority reserved in the first declaration of trust, and in accordance with it, the truster, after the death of the trustee, appointed a new trustee to administer the trust, with modifications then declared. He did not revoke the trust, but, so far as consistent with the new instrument, confirmed it. The legal estate in Albert (no will appearing) on his death devolved upon his widow and heirs. They are before the court. All the beneficiaries are before the court. The suit is by the new trustee. Its very purpose is to establish that the estate in Albert was held by him in trust only; that his office of trustee was terminated by his death; that the plaintiff has succeeded him, and is entitled to administer the trust and to be invested with the trustee's estate. On the undisputed facts, and the legal effect which we have given to them, he is entitled to this relief.—*Affirmed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.