GOODRICH *v.* CITY NATIONAL BANK & TRUST COMPANY OF BATTLE CREEK.

1. Trusts—Construction of Instruments—Finding of Court—Preponderance of Evidence.

Finding of court that deceased who had had extensive experience in probate matters and was an able accountant executed instrument as a trust instrument rather than a will *held,* demonstrated by a preponderance of the evidence.

2. Same—Validity—Reservations.

Reservations by settlor which permit him to reserve to himself a life income, to use or dispose of the corpus, supervise the property, or substitute a new trustee do not alone invalidate the trust.

3. Same—Reserved Right of Disposal—Effect.

Trust is not rendered invalid by fact that in the exercise of reserved right to use or dispose of it, settlor leaves no property for beneficiaries to receive.

4. Contracts—Construction—Intent.

Courts will construe contracts so as to give effect to true intent of the parties notwithstanding the names they may have given their relation.

5. Trusts—Revocation.

Reservation of power of revocation does not void a trust instrument nor render it testamentary.

6. Same—Reserved Powers—Vesting of Title.

Settlor's reservation of power to change beneficiary, to amend trust instrument, to revoke trust in whole or in part, to withdraw all or part of the estate and to control investments *held*, not such a combination of reserved powers as to prevent vesting of title to trust property in trustee and beneficiaries subject to reserved powers which amounted to conditions subsequent.

7. Same—Combination of Reserved Powers—Settlor's Intent.

A combination of reserved powers in settlor must be taken into account and may have effect as bearing upon his intention in case the instrument is of doubtful validity.

8. Same—Ambiguity—Parol Evidence.

Trust instrument containing reservations of powers in settlor is presumably to be given effect according to its terms but when the terms create doubt as to its validity, parol evidence may be resorted to in order to determine settlor's intent.

9. Same—Reservations of Power—Effect.

Instrument reserving power in settlor to change beneficiary, amend it, make total or partial revocation, withdraw all or part of estate and control investments *held*, to create a trust, not a will, where settlor included only a part of his property and parol evidence indicates he merely sought to safeguard against future contingencies.

10. Same—Public Policy—Taxation.

Trust instrument reserving to settlor power to change beneficiary, amend it, make total or partial revocation, withdraw all or part of estate and control investments *held*, not contrary to public policy as offering means to evade taxes as trusts may have different private and public effect and courts need not avoid private rights to aid collection of taxes.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted October 4, 1934. (Docket No. 84, Calendar No. 38,003.) Decided January 7, 1935.

Bill by Norris E. Goodrich, administrator with the will annexed of the estate of George A. Johnson, deceased, against City National Bank & Trust Company and others to set aside a trust agreement. Order entered making defendants Phillip H. Goodrich and John K. Goodrich parties plaintiff. Decree for defendants. Plaintiffs appeal. Affirmed.

*Verner W. Main (Henry Jacobs,* of counsel), for plaintiffs.

*Miller & Schroeder,* for defendant City National Bank & Trust Company.

*Charles Lemuel Dibble,* for defendant Ella M. Brown Charitable Circle.

Fead, J. George Johnson and Rose Goodrich were married in 1895. Each owned property. In 1897 each made a will with the other as sole beneficiary, subject only to possibility and survival of children. Johnson died in January, 1933, leaving his widow his sole heir at law. Mrs. Johnson died in October, 1933, leaving plaintiffs Goodrich as her heirs at law.

In 1931 Johnson lost the sight of one eye and the other was imperiled. He wanted to put some of his property in the hands of another to handle for him. He was concerned about his wife's intense devotion to a church and was afraid she would make excessive donations to the denomination to her own disadvantage. He was not an adherent of the same religious body and felt inclined toward other charities.

August 5, 1931, he executed a trust agreement with defendant City National Bank & Trust Company of Battle Creek, and, under it, turned over to the trustee certain bonds, stocks and real estate mortgages, but no lands and not all of his personal

property. The instrument was prepared by defendant's trust officer, delivered to Johnson, he retained it some days, submitted it to his attorney, and then it was executed by both parties but was not witnessed.

Plaintiffs claim Johnson executed the instrument by mistake, under belief it was a will. The testimony shows he so referred to it, orally and in written notation, in a few instances. But we agree with the circuit court that the preponderance of the evidence demonstrates Johnson executed it as a trust agreement, intending it to have effect as such according to its terms. He was an intelligent man, an accountant with considerable ability, and he had had quite extensive experience in probate matters. It is inconceivable that he would execute a will without witnesses, or, after the care he exercised and legal advice he received, that he intended the agreement to be something different than it purported to be.

The important question is upon the legal effect of the agreement. Plaintiffs contend the instrument created only an agency, was testamentary in character and, because not witnessed in conformity with the law of wills, was void; and, therefore, Johnson's property devolved upon his wife at his death and her heirs take through her. The court held the trust valid and entered decree dismissing the bill.

After declaring the purpose to create a trust for the benefit of the settlor and other parties, and the acceptance thereof by the trustee, the agreement proceeds:

"*First*, that the settlor has assigned and transferred the mortgages, bonds and other property described in the schedule attached hereto, and has conveyed to the said trustee the lands described in said schedule.

"*Second,* that the settlor may, from time to time, with the consent of the trustee, add further property, real, personal or mixed, to the trust estate, which shall thereupon be subject to all the terms of this trust.

"*Third,* that the trustee shall, except as hereinafter provided, have full power and authority to mortgage or otherwise incumber, to lease, sell or otherwise dispose of the real property described in said schedule at such time and upon such terms as it may deem advisable, and shall have full power to manage and control said lands, to collect rents and other payments thereon and to pay taxes, water rates and special assessments, to make repairs to the buildings thereon, to insure and keep insured the same for such amount as it may deem necessary or advisable.

"*Fourth,* that the trustee shall, except as hereinafter provided, have full power and authority to sell, exchange, assign or transfer, to institute foreclosure proceedings thereon and to do all acts which may seem necessary or advisable for the benefit of the trust estate in connection with any personal property described in said schedule, and shall have full power to collect the interest, dividends and other payments due thereon.

"*Fifth,* that the settlor reserves the right at any time, by written notice to the trustee and upon payment of all sums due it, to change any beneficiary; amend any provision hereof, to such extent as may be acceptable to the trustee; and/or revoke this trust in whole or in part, or withdraw all or any part of the trust estate. That during the lifetime of the settlor no changes or substitutions of any of the trust estate shall be made by the trustee without first obtaining the consent in writing of the settlor, and that all investments of funds which may be necessary from time to time during the lifetime of the settlor shall be made by the trustee at the direction of the settlor. This provision relating to the

investment of trust funds may be waived at the option of the settlor, in which event the trustee shall invest said trust funds in such good income-producing securities as it in its discretion deems advisable.''

It further provides that the net income from the estate be paid to the settlor during his lifetime; upon his death, to his wife for her lifetime; upon the death of both, $600 each to plaintiffs Phillip H. and John K. Goodrich or their children; the balance held in trust for the use and benefit of the Ella M. Brown Charitable Circle of Marshall, Michigan; the net income to be paid to the circle, but the trustee authorized to turn over any part of the principal to the circle if it be required for the erection of a new hospital building; and in case the circle should cease to operate as a charitable organization or go out of existence the balance of the trust fund be paid to the Old Ladies' Home at Marshall.

On July 29, 1932, an amendment was made substituting the Lane-Dulcenia Memorial Home of Charlotte for the Old Ladies' Home, as the ultimate contingent beneficiary, and declaring that in all other respects the trust agreement remain unchanged.

Further—''*Seventh:* If the trustee deems the income payable hereunder not sufficient to provide for the proper support, maintenance and comfort of any beneficiary, it may as often as it deems necessary, pay to or apply for the use and benefit of such beneficiary such additional part up to and including the whole thereof, of the principal of the trust estate.

''*Eighth:* The trustee may at its option at any time, in connection with its management of the trust estate or the collection of any moneys due or payable to it as trustee, compromise any claims existing in favor of or against the trust estate, and may loan or advance its own funds for any trust purpose to

this trust upon the security of the entire trust estate, said loans to bear interest at the then current rate from date of advancement until repaid; but the trustee shall in no event be required to make any such loan or advancement.

"*Ninth:* That the trustee shall have the authority to pay the funeral expenses of both the settlor, and the wife of the settlor, should no other estate or property be available for the payment of such expenses."

The balance of the instrument covers the compensation and duty of the trustee to render semi-annually statements of the trust estate to the beneficiary, among other things, providing: "(b) One per cent. of any moneys invested or reinvested by it on its sole responsibility."

Johnson delivered to the trustee some bonds, stocks and mortgages and, on August 5th, deposited with it other bonds. He conveyed no real estate to the trustee.

At his death he left other property which was administered in the ordinary course.

The general principles applying to such instruments are discussed in a multitude of cases, which may be found cited in 73 A. L. R. 209, note, and 43 Harvard Law Review, 521. They fully sustained the statement in 65 C. J. p. 274:

"The fact that the settlor, in creating the trust, makes certain reservations, does not in itself affect the validity of the declaration. Thus he may, in a proper case, reserve to himself a life income from the subject matter of the trust, or he may reserve the right to use or dispose of the corpus, or to supervise the trust property in the hands of the trustee, or to substitute a new trustee. The fact that there may be no portion of the trust property left for the beneficiaries to receive, by reason of the settlor's

exercise of his reserved right to use or dispose of it, does not render the declaration invalid.''

''In this, as in the case of other relations that are sometimes difficult to distinguish from agency, the courts will construe the contract so as to give effect to the true intent of the parties, notwithstanding the name they may have given to their relation in the contract.'' 2 C. J. p. 425.

This court has not had occasion to pass upon an identical instrument but has held that reservation of the power of revocation does not void the trust nor render it testamentary. *Wilcox* v. *Hubbell,* 197 Mich. 21.

Plaintiffs' contention, however, is that, although the instrument would not be invalid because of any one or of a combination of some of the reservations, the cumulative effect of the whole, particularly the power over investments, was to make the trustee merely an agent of the settlor, taking title to the property for convenience, and the instrument was wholly testamentary in force and effect.

Trust instruments are of infinite variety and general discussion of authorities could do no more than establish and illustrate the rules above stated. The cases were considered by the circuit judge in an exhaustive and excellent opinion. We will confine our discussion to those relied upon by counsel for plaintiffs or which seem to be most nearly in point upon the facts.

The powers reserved to the settlor were:

(1) To change the beneficiary and amend the trust instrument.

(2) To revoke the trust in whole or in part or withdraw all or any part of the trust estate.

(3) To control investments, in that no change, substitution or investment should be made by the trustee except with consent or at direction of the

settlor unless he should waive the reservation, in which event the trustee would invest at its discretion.

There seem to be few cases which involve trust instruments containing as broad reservations of power in the settlor as the one at bar, but in those which have come to our attention the following sustain the trust: *Keck* v. *McKinstry,* 206 Iowa, 1121 (221 N. W. 851); *Talbot* v. *Talbot,* 32 R. I. 72 (78 Atl. 535, Ann. Cas. 1912 C, 1221); *Van Cott* v. *Prentice,* 104 N. Y. 45 (10 N. E. 257); *Kelly* v. *Parker,* 181 Ill. 49 (54 N. E. 615).

*Union Trust Co.* v. *Hawkins,* 121 Ohio St. 159, 172 (167 N. E. 389, 73 A. L. R. 190), is to the contrary but upon a theory generally rejected by the courts, including our own:

"Our dissent is based upon the proposition that there is not a full and complete transfer where the settlor reserves the right to modify the uses or revoke the trust."

Plaintiffs also rely on *McEvoy* v. *Boston Five Cents Savings Bank,* 201 Mass. 50 (87 N. E. 465), and *Warsco* v. *Oshkosh Savings & Trust Co.,* 183 Wis. 156 (196 N. W. 829). Both involved certificates of deposits delivered to the trustee, who was required to pay to the settlor any amount he should demand at any time. The only difference between them, of interest here, was that in the *McEvoy Case* the trustee had no power of investment and management, while in the *Warsco Case* it had. In the *Warsco Case* the court quoted from and followed the *McEvoy* opinion.

In *Jones* v. *Old Colony Trust Co.,* 251 Mass. 309 (146 N. E. 716), however, the instrument was similar to that in the *Warsco Case,* in that it granted power of investment and management to the trustee but provided that it should pay to the settlor such por-

tion of the trust fund as he might request from time to time, and the court held it a valid trust agreement. It distinguished the *McEvoy Case* on the sole ground:

"There the nominal trustee had none of the ordinary powers of a trustee and was in substance and effect only an agent of the donor."

The essential question is whether, by the instrument or in pursuance of it, title to the trust property passed to the trustee and the beneficiaries took vested interests in it. On its face, the instrument operated to that effect. The reserved powers amounted to conditions subsequent, upon the happening of which vested interests would have become divested. The situation as to the reservations is the same in this respect as the gift to the Brown charitable circle. It took a vested interest which, however, would be divested upon its ceasing to operate as a charitable organization or on going out of existence. For discussion of the legal operation, with citation of authorities, see *Cramer* v. *Hartford-Connecticut Trust Co.,* 110 Conn. 22 (147 Atl. 139, 73 A. L. R. 201).

A combination of reservations, however, must be taken into account and may have effect as bearing upon the intention of the settlor in case the instrument is of doubtful validity. In the *McEvoy Case* the fact that the settlor expressed herself as having made the trust agreement instead of a will seems to have been a decisive factor.

In 1 Perry on Trusts (7th Ed.), p. 120, § 97, it is said:

"But provisions which enable the settlor to revoke the trust or to change the beneficiaries at will are looked upon with considerable suspicion by the courts, and, if convinced that the only object of the settlor was to make a revocable disposition to take

effect after his death, the courts will not sustain the trust.''

The testimony is not convincing that Johnson's sole purpose was to make a testamentary disposition of his property. He included only part of it and left his will intact to control the disposition of the balance. It is plain that he wanted to make a living trust for his own benefit during his lifetime because of his ailments, to insure certain beneficiaries of his bounty, and to prevent undesired disposition of his estate by his wife. In providing the reservations, he was merely setting up not uncommon safeguards against future contingencies. In speaking of Johnson's intention and purpose, as indicated by extraneous testimony, we do not mean to inject uncertainty into like declarations of trust. When understandingly executed, they presumably are to be given effect according to their terms; and it is only when the terms create a doubt of validity that other considerations intrude.

Plaintiffs further urge that instruments of this nature are contrary to public policy because they would offer a means of evasion of State and Federal estate inheritance taxes or inconvenience their collection. The government has ample authority to conserve its power of taxation. It can, and must, and does, provide against evasion. Trusts may have different private and public effect. *Burnet* v. *Guggenheim*, 288 U. S. 280 (53 Sup. Ct. 369). There is no occasion for the courts to avoid private rights in aid of the collection of taxes by setting up conditions which the legislature did not deem necessary.

Decree affirmed, with costs.

POTTER, C. J., and NELSON SHARPE, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.