SABIN-SCHEIBER v SABIN

Docket No. 62461. Submitted June 6, 1983, at Lansing.—Decided
    August 31, 1983.

   Lloyd Sabin and his wife Mary A. Sabin executed identical inter
     vivos trust agreements. Mary named Lloyd, their son Jess, and
     herself as co-trustees of her trust. Three years later, Mary
     became mentally incompetent and was confined to a rest home
     until she died. Shortly after Mary became mentally incompe-
     tent, Lloyd removed cash assets approximating $130,000 from
     the corpuses of the two trusts and opened five joint bank
     accounts with Jess. Two years later, Lloyd removed approxi-
     mately $80,000 from the trusts and opened five more joint bank
     accounts with Jess. Real estate worth approximately $80,000
     was left in Mary Sabin's trust. Lloyd Sabin died approximately
     two months before Mary died. Each trust agreement provided
     that upon the death of both Lloyd and Mary the corpus of the
     estate was to be divided in two equal shares, one share going to
     Jess and the other share going to the heirs of the Sabins'
     deceased son, Kenneth. The heirs of Kenneth Sabin, Mary Lou
     Sabin-Scheiber and Cynthia Sabin, filed a complaint against
     Jess Sabin in Eaton Circuit Court alleging a breach of loyalty
     as trustee and praying for an accounting and for the removal of
     Jess Sabin as trustee. Plaintiffs amended their complaint by
     adding an allegation that defendant exercised undue influence
     over Lloyd Sabin. The trial court, Richard Robinson, J., denied
     defendant's motion to strike plaintiffs' demand for a jury trial
     on the issues of undue influence and damages. Following trial,
     the jury found that defendant did not exercise undue influence
     over Lloyd Sabin. Arguments on the equitable issue of breach
     of trust were subsequently heard, with the court finding that

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 822.
[2] 5 Am Jur 2d, Appeal and Error § 831.
[3] 76 Am Jur 2d, Trusts §§ 114, 138.
[4] 76 Am Jur 2d, Trusts § 277.
[5] 76 Am Jur 2d, Trusts § 311.
[6] 76 Am Jur 2d, Trusts § 79.

defendant did not breach his fiduciary obligation as trustee of either Lloyd's or Mary's trust. Plaintiffs appeal. *Held:*

1. The trial court found, and the record supports the finding, that the transfers from Mary Sabin's trust were made by Lloyd Sabin, not defendant, out of accounts which were accessible to Lloyd as owner or joint owner of the accounts with Mary. There was no breach of trust.

2. Lloyd Sabin's failure to submit his intentions in writing to Jess Sabin as technically called for in the trust agreements does not render the transfers ineffective.

3. The trial court did not err in finding that defendant did not breach his fiduciary duty as co-trustee of the Lloyd Sabin trust and the Mary Sabin trust.

Affirmed.

1. APPEAL — EQUITY — *DE NOVO* REVIEW.

   The Court of Appeals reviews *de novo* cases which are equitable in nature.

2. APPEAL — FINDINGS OF FACT — CREDIBILITY OF WITNESSES.

   A trial court's findings of fact in a bench trial of a case involving equitable issues shall not be disturbed on appeal unless clearly erroneous, and due deference shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

3. TRUSTS — INCOME — SETTLOR'S RECEIPT OF INCOME.

   A donor, or settlor, may establish a trust naming himself as trustee and receive the income generated by the principal held for the benefit of another.

4. TRUSTS — RESERVATION OF RIGHT TO CORPUS.

   A settlor may reserve the right to use or dispose of the corpus of a trust.

5. TRUSTS — REVOCATION — TRUSTEE'S DUTY — STRICT COMPLIANCE.

   A trustee owes the duty to itself and to the settlor to insist on strict compliance with revocation requirements provided in a trust agreement.

6. TRUSTS — REVOCATION — WRITTEN NOTICE — WAIVER — TRUSTEE.

   A valid revocation or withdrawal from a trust estate may be accomplished by the settlor without the written notice required by the trust agreement where a trustee voluntarily waives the written notice.

*Patricia D. Bean,* for plaintiffs.

*Glassen, Rhead, McLean & Campbell* (by *R. F. Rhead,* of counsel), for defendant.

Before: DANHOF, C.J., and ALLEN and K. N. HANSEN,* JJ.

PER CURIAM. Plaintiffs-appellants appeal as of right from a judgment of no cause of action rendered on December 15, 1981, following a bench trial.

Lloyd Sabin and Mary A. Sabin had been married 40 years and had two children, Jess Sabin, defendant herein, and Kenneth Sabin. Kenneth Sabin died, leaving two children, Mary Lou Scheiber and Cynthia Sabin, plaintiffs herein. On February 5, 1972, Lloyd and Mary executed identical inter vivos trust agreements. Mary named Lloyd, Jess, and herself as co-trustees. Mary Sabin became mentally incompetent in 1975 and was confined to a rest home until her death on April 13, 1978. Between May 5, and September 30, 1975, Lloyd Sabin removed cash assets approximating $130,000 from the corpus of both trusts and opened five joint bank accounts with Jess Sabin. On September 9, 1977, Lloyd Sabin removed approximately $80,000 from the trusts and opened five more joint bank accounts with Jess Sabin. Real estate approximating $80,000 was left in Mary Sabin's trust. Lloyd Sabin died on February 7, 1978. Mary Sabin died approximately two months later on April 13, 1978.

Each trust agreement provided that upon the death of both Lloyd and Mary, the corpus of the estate was to be divided in two equal shares, one share to Jess Sabin and one share to the heirs of the settlors' deceased son, Kenneth; namely, plain-

* Circuit judge, sitting on the Court of Appeals by assignment.

tiffs herein. On June 7, 1978, plaintiffs filed a complaint against defendant, alleging a breach of loyalty as trustee and praying for an accounting and for the removal of defendant as trustee. Plaintiffs amended their complaint on September 14, 1978, by adding an allegation that defendant exercised undue influence over Lloyd Sabin. The trial court entered an order denying defendant's motion to strike plaintiffs' demand for a jury trial on the issues of undue influence and damages. The Court of Appeals, in an unpublished order, upheld the trial court's denial of defendant's motion, and on November 12, 1981, the jury found that defendant did not exercise undue influence over Lloyd Sabin. Arguments on the equitable issue of breach of trust were held on December 15, 1981. The trial court issued a written opinion on December 15, 1981, finding that defendant did not breach his fiduciary obligation as trustee of either Lloyd's or Mary's trust.

On appeal plaintiffs argue that defendant was under a fiduciary obligation to administer the assets of the two trusts for the benefit of the settlors and the children of the settlors after their deaths, that defendant breached his fiduciary obligation to Mary A. Sabin by becoming part of a procedure whereby co-trustee Lloyd Sabin removed cash assets from both trusts and deposited them in joint bank accounts with himself and defendant, and that defendant thus became a direct beneficiary of a substantial part of the trust corpus to the detriment of the other beneficiaries and allowed the funds which were to be used for the care and comfort of the settlors to be exposed to outside claims and did not communicate with the other beneficiaries or seek outside advice.

Defendant answered, contending that each trust

was an inter vivos trust which could be revoked in whole or in part at any time by the settlor Lloyd Sabin,[1] that the testimony at trial showed that defendant did nothing more than to sign the account cards when his father approached him and told him he was withdrawing funds and wanted him (Jess) to sign the transfer cards, that defendant did in fact provide for his mother's care during the two months his mother lived following Lloyd's death and that, although ¶ I-1.1 of the trust agreement required a written notice delivered to the trustee of any revocation or amendment to the trust agreement, the co-trustee could waive such requirement.

This Court reviews *de novo* cases, such as the present case, which are equitable in nature. The trial court's findings of fact shall not be disturbed on appeal unless clearly erroneous, however, and due deference shall be given to the trial court's opportunity to judge the credibility of the witnesses. *Detroit Bank & Trust Co v Groupt,* 95 Mich App 253, 267-268; 289 NW2d 898 (1980). A donor, or settlor, may establish a trust naming himself as trustee and receive the income generated by the principal held for the benefit of another. *Osius v Dingell,* 375 Mich 605, 614; 134 NW2d 657 (1965). A settlor may also reserve the right to use or dispose of the corpus of a trust. *Goodrich v City National Bank & Trust Co of Battle Creek,* 270 Mich 222, 228; 258 NW 253 (1935).

In addition to providing that the settlor may revoke or amend the agreement at any time, each

---

[1] "Donor, by a written instrument, signed and delivered to Trustee during Donor's life, *may revoke this Agreement in whole or in part and amend it from time to time in any respect* except that the duties and compensation of the Trustee shall not be materially changed by any amendment without his written approval." (Art I-1.1 of each trust agreement.) (Emphasis added.)

agreement provides that when more than one
person serves as trustee, any one of them may
exercise any power and authority of the trustee.
Similarly, each agreement provides that during
the life of the donor, the trustee shall pay all of
the net income of the trust to the donor, or to
whomever the donor directs in writing, and that
the trustee shall pay any part of the principal of
the trust as the donor directs in writing. (Trust
Agreement, Art II, 2.1).) Finally, the trust agree-
ments provide that where the trustee is of the
opinion that the donor is incapable of managing
his or her affairs, the trustee may, in his discre-
tion, pay or use the amount of income and princi-
pal from the trust necessary for the donor's sup-
port, comfort, and welfare.

Although defendant owed a duty of good faith as
a co-trustee of both trusts in dealing with the
beneficiaries of the trust, *Sloan v Silberstein,* 2
Mich App 660, 673; 141 NW2d 332 (1966), neither
trust agreement required defendant to give notice
to beneficiaries of trust changes. After Mary Sabin
became incompetent in 1975, the "trustee" was
Lloyd and Jess Sabin. Under the terms of the trust
agreements, when more than one person was serv-
ing as trustee, any one of them could exercise any
power or authority of the trustee. Further, the
trustee was required to pay any part of the princi-
pal of the trust as directed in writing by the
donor.

The trial court found, and the record supports
the court's findings, that the transfers were not
made by defendant but were made by Lloyd out of
accounts which were accessible to him as owner or
joint owner of the accounts with Mary. The attor-
ney who drew the trusts testified that Lloyd made
the transfers for the express purpose of decreasing

the amount which otherwise would go to plaintiffs, whom Lloyd felt were money hungry. After the transfers were made, Lloyd used the income from the newly established accounts for Mary's care. After Lloyd's death, defendant used the income from the new accounts to the extent necessary for Mary's care until her death. Under these circumstances and in view of the powers conferred under the trust agreements, we find no breach of trust. Certainly, we are unable to dub the trial court's findings clearly erroneous. *Detroit Bank & Trust, supra.*

The only problem we perceive in the instant situation is whether Lloyd Sabin's failure to submit his intentions in writing to Jess Sabin as technically called for in ¶ I of the trust agreements (see fn 1) rendered the transfers ineffective. The question presented is of first impression. While a trustee owes the duty to itself and to the settlor to insist on strict compliance with revocation requirements provided in a trust agreement, *Hackley Union National Bank v Farmer,* 252 Mich 674, 682; 234 NW 135 (1931), we opine that Lloyd Sabin properly withdrew the trust funds despite noncompliance with the writing requirement. The purpose of the notice of intent in writing was for the benefit of the trustee. The necessity of such writing, however, is not apparent in light of the fact that the settlor in the present case was also a co-trustee with full powers of the trustee. While no Michigan court has addressed this specific issue, other courts have held that a valid revocation or withdrawal from a trust estate is accomplished where the co-trustee voluntarily waives the written notice requirement contained in a trust agreement. *St Louis Union Trust Co v Dudley,* 162 SW2d 290 (Mo App, 1942); *Miller v Exchange*

*National Bank of Tulsa,* 183 Okla 114; 80 P2d 209 (1938). In the present case, defendant was put on notice when Lloyd Sabin approached him with the bank account signature cards. When defendant signed the cards, he implicitly gave his consent to waive the writing requirement.

Accordingly, we hold that the trial court did not err in finding that defendant did not breach his fiduciary duty as co-trustee of the Lloyd Sabin trust and the Mary Sabin trust.

Affirmed. Costs to defendant.