*In re* THWAITES ESTATE

Docket No. 105846. Submitted October 5, 1988, at Marquette. Decided December 19, 1988.

Two sisters, F. Jean MacLaren Bowman and Evangeline Mac-Laren Thwaites, each prepared a will which contained identical provisions concerning the establishment of a testamentary trust to be funded with $250,000 from each sister. The trust was to be distributed to Lake Superior State University for construction of the MacLaren Wing of the Walker Cisler College Center if and when the university met all of the necessary conditions precedent to the bequest. The wills were different in regard to the other specific bequests made therein. Mrs. Thwaites became ill and a conservator was appointed for her. Mrs. Bowman died and her will went to probate. There were insufficient assets in her estate to fund her gift to the university since a substantial portion of her wealth was held in joint tenancy with Mrs. Thwaites. Mrs. Thwaites then died. When her will went to the Chippewa County Probate Court, the university claimed that it should receive $500,000 from the Thwaites estate to fund the gifts from both Bowman and Thwaites. The university petitioned for construction of the will and specific performance of contract. Respondents, Lillian Ma-cLaren, Sharon MacLaren, First United Presbyterian Church of Sault Ste. Marie, and others, did not contest Mrs. Thwaites' $250,000 testamentary gift to the university and agreed that the university should be given an opportunity to comply with the conditions necessary to receiving the gift. Respondents did contend that Mrs. Bowman's gift of $250,000 could not be taken from the Thwaites estate. The probate court, Lowell L. Ulrich, J., entered an order denying the petition for construction of the will and specific performance of contract. The court did give the university the opportunity to receive Mrs. Thwaites' $250,000

REFERENCES

Am Jur 2d, Judgments § 398.

Am Jur 2d, Wills §§ 327 *et seq.*, 753 *et seq.*

Right of party to joint or mutual will, made pursuant to agreement as to disposition of property at death, to dispose of such property during life. 85 ALR3d 8.

gift if it met the required conditions under her will. The university appealed.

The Court of Appeals *held:*

1. The university failed to meet its burden of proving that a contract to execute mutual wills existed between the MacLaren sisters.

2. The Thwaites will indicates an intention by the testator that the money for the university be taken from each estate separately as opposed to a binding contract to have the survivor of the two sisters responsible for the whole gift.

3. The university is entitled to $250,000 from the Thwaites estate if it meets the necessary conditions of the will.

4. Even if a contract existed, it was one sister's promise to bequeath $250,000 in exchange for the promise of the other sister to bequeath $250,000, and did not require the Thwaites estate to pay the failed bequest of Mrs. Bowman.

5. The issue of an alleged contract or mutual will was not actually litigated when the university attempted to receive Mrs. Bowman's $250,000 bequest from the Bowman estate. The probate court erred in ruling that the university was collaterally estopped on that issue. However, the probate court fully considered the university's claim and, therefore, any error was harmless.

Affirmed.

1. Wills — Mutual Wills.

Mutual wills are the separate wills of two or more persons which are reciprocal in their provisions, or wills executed in pursuance of a compact or agreement between two or more persons to dispose of their property, to each other or to third persons, in a particular mode or manner; an agreement that mutual wills are to be binding on the survivor cannot be inferred from the identical and reciprocal provisions alone, but must be established by other evidence.

2. Contracts — Specific Performance.

One seeking specific performance of a contract to leave property by will has the burden of proving the contract.

3. Wills — Contract to Make Will or Devise.

A contract to make a will or devise, not to revoke a will or devise, or to die intestate, if executed after the effective date of MCL 700.140, can be established only by one of the following: (1) A provision of a will stating material provisions of the contract, (2) an express reference in a will to a contract and extrinsic evidence providing the terms of the contract, or (3) a writing

signed by the decedent evidencing the contract; the execution of a joint will or mutual wills does not give rise to a presumption of a contract not to revoke the will or wills (MCL 700.140; MSA 27.5140).

4. ESTOPPEL — COLLATERAL ESTOPPEL.

Collateral estoppel bars the relitigation of issues previously decided between the same parties where a second cause of action is different; collateral estoppel conclusively bars only issues actually litigated in the first action.

*John Lambros, P.C.* (by *John Lambros*), for Lake Superior State University.

*Brown & Brown* (by *Prentiss M. Brown, Jr.*), for Lillian MacLaren, Sharon MacLaren, and other respondents MacLaren.

*Thomas J. Veum, P.C.* (by *Leanne Barnes Deuman*), for First United Presbyterian Church of Sault Ste. Marie.

Before: GRIBBS, P.J., and CYNAR and J. T. KALLMAN,* JJ.

CYNAR, J. Petitioner, Lake Superior State University, appeals as of right from the Chippewa County Probate Court's December 30, 1987, order denying its petition for construction of a will and specific performance of a contract. We affirm.

The MacLaren sisters, F. Jean MacLaren Bowman and Evangeline MacLaren Thwaites, were very involved in civic activities in Sault Ste. Marie, Michigan, and often contributed money to several civic projects in the area. Through their civic interests, they developed a close relationship with Dr. Kenneth Shouldice. Dr. Shouldice, who was the president of Lake Superior State University, was involved in various community and uni-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

versity fund-raising efforts. The MacLaren sisters often contributed money for Shouldice's community and university projects.

After having several discussions with Dr. Shouldice, the MacLaren sisters decided that, upon their deaths, they wanted to do something for the town and the university in memory of their parents. Shouldice suggested that they contribute money for an extension to the Walker Cisler College Center on the university campus. Pursuant to their discussion, Shouldice wrote a letter placing his understanding of the conversation in writing. According to the letter, the addition to the Cisler Center would be called the MacLaren Wing of the Walker Cisler College Center. The MacLaren sisters decided to contribute $250,000 each, for a total of $500,000, to the construction of the Mac-Laren Wing.

Subsequently, the MacLaren sisters instructed their attorney to prepare their last wills and testaments. The wills contained identical provisions concerning the establishment of a testamentary trust to be funded with $250,000 from each sister. The trust was to be distributed to the university for construction of the MacLaren Wing if and when the university met all of the necessary conditions precedent to the bequest. However, the other provisions in the two wills, involving specific bequests, were different. Although the MacLaren sisters were both in their advanced years in March, 1982, when the wills were executed, the record indicates that both sisters were competent.

Shortly after the MacLaren sisters executed their wills, Dr. Shouldice retired from his position as president of the university. The MacLaren sisters then began to have second thoughts about bequeathing the money to the university. The sisters were concerned that, upon Shouldice's de-

parture, the university would use their money for purposes other than the MacLaren Wing. Dr. Shouldice advised the MacLaren sisters to tighten the provisions in their wills to ensure that their intent would be fulfilled. Nevertheless, the sisters remained concerned about their wills and discussed changing them.

At about the same time, the physical and mental condition of Evangeline MacLaren Thwaites began to deteriorate. F. Jean MacLaren Bowman expressed concern about the deteriorating health of her sister. Mrs. Bowman took it upon herself to care for her ailing sister. It was the overall concern of Mrs. Bowman that she and her sister would have money available to care for themselves before any money would pass to the university. Thus, a substantial portion of the sisters' wealth was held in joint tenancy. Additionally, due to her failing health, a conservator was appointed for Mrs. Thwaites.

On June 5, 1984, Mrs. Bowman died after suffering a stroke. Mrs. Bowman's will then went to probate. However, because a substantial portion of her wealth was held in joint tenancy with Mrs. Thwaites, the assets of Mrs. Bowman's estate were insufficient to fund her gift to the university. In fact, money had to be borrowed from the conservator estate of Mrs. Thwaites to pay for the estate taxes and administration costs of the Bowman estate.

On December 30, 1985, Mrs. Thwaites died. When Mrs. Thwaites' will went to probate, petitioner claimed that it should receive $500,000 from the Thwaites estate to fund the gifts from both Bowman and Thwaites. Petitioner then filed a petition for construction of the will and specific performance of contract. Respondents did not contest Mrs. Thwaites' $250,000 testamentary gift to

petitioner and agreed that petitioner should be given an opportunity to comply with the conditions necessary to receiving the gift. However, respondents contended that Mrs. Bowman's testamentary gift of $250,000 could not be taken from the Thwaites estate.

On December 30, 1987, the Chippewa County Probate Court entered an order denying the petition for construction of the will and specific performance of contract. The probate court's order did give petitioner an opportunity to receive Mrs. Thwaites' $250,000 gift if petitioner met the required conditions under the last will and testament of Mrs. Thwaites. Petitioner now appeals as of right and contends that it should be entitled to receive the sisters' entire gift of $500,000 from the estate of Mrs. Thwaites.

On appeal, petitioner argues that the MacLaren sisters executed mutual wills with a reciprocal contract to make the bequests to the university binding on the survivor of the two sisters. Petitioner further contends that the statutory requirements for such a contract were met in this case. We disagree.

Mutual wills are the separate wills of two or more persons which are reciprocal in their provisions, or wills executed in pursuance of a compact or agreement between two or more persons to dispose of their property, to each other or to third persons, in a particular mode or manner. 97 CJS, Wills, § 1364, p 286.

An agreement that mutual wills are to be binding on the survivor cannot be inferred from the identical and reciprocal provisions alone, but must be established by other evidence. *Glover v Glover,* 18 Mich App 323, 324; 171 NW2d 51 (1969), lv den 383 Mich 757 (1969). One seeking specific performance of a contract to leave property by will has

the burden of proving the contract. *Hammel v Foor,* 359 Mich 392, 398; 102 NW2d 196 (1960); *In re Fritz Estate,* 159 Mich App 69, 75; 406 NW2d 475 (1987); *Glover, supra.* Thus, petitioner is required to prove an actual express agreement and not a mere unexecuted intention. *In re Fritz Estate, supra.*

MCL 700.140; MSA 27.5140 provides:

> (1) A contract to make a will or devise, not to revoke a will or devise, or to die intestate, if executed after the effective date of this act, can be established only by 1 of the following:
> (a) A provision of a will stating material provisions of the contract.
> (b) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract.
> (c) A writing signed by the decedent evidencing the contract.
> (2) The execution of a joint will or mutual wills does not give rise to a presumption of a contract not to revoke the will or wills.

In the present case, we find that petitioner failed to meet its burden of proving that a contract to execute mutual wills existed between the MacLaren sisters. There is no provision in the Thwaites will stating material provisions of a contract nor is there any express reference in the will to a contract. Furthermore, the record does not reveal any writing signed by Mrs. Thwaites evidencing a contract.

Additionally, we note that the Thwaites will provides, in pertinent part:

> Upon the death of the second decedent of both F. Jean MacLaren Bowman and of Evangeline MacLaren Thwaites and the appointment of our

Trustees shall consider and may approve our funds from each estate for the making of the proposed drafts for construction by the Board of Control of Lake Superior State College.

We believe that the words "from each estate" indicate an intention by the testator that the money for the university be taken from each estate separately as opposed to a binding contract to have the survivor of the two sisters responsible for the whole gift.

Therefore, we conclude that petitioner failed to prove that a contract existed between the MacLaren sisters and that petitioner is not entitled to $500,000 from the estate of Mrs. Thwaites. However, as the probate court indicated, petitioner is entitled to $250,000 from the Thwaites estate if petitioner meets the necessary conditions of the will.

We further agree with the probate court's finding that, even assuming that there was a contract between the MacLaren sisters, it was Evangeline MacLaren Thwaites' intention to give petitioner no more than $250,000. If any contract existed, it was one sister's promise to bequeath $250,000 in exchange for the promise of the other sister to bequeath $250,000. Thus, even if such a contract existed, it did not require the Thwaites estate to pay the failed bequest of Mrs. Bowman.

Petitioner lastly argues that the probate court erred in ruling that petitioner was collaterally estopped from receiving Mrs. Bowman's bequest of $250,000 from the Thwaites estate.

Collateral estoppel bars the relitigation of issues previously decided between the same parties where a second cause of action is different. *Cogan v Cogan*, 149 Mich App 375, 379; 385 NW2d 793 (1986). While res judicata bars the relitigation of

issues which might have been presented in the first action, collateral estoppel conclusively bars only issues actually litigated in the first action. *Id.*

In this case, petitioner first attempted to receive Mrs. Bowman's $250,000 bequest from the Bowman estate. Then, after Mrs. Bowman's bequest failed, petitioner attempted to receive $500,000 from the Thwaites estate based on an alleged contract between Mrs. Bowman and Mrs. Thwaites. We find that the issue of an alleged contract or mutual will was not actually litigated in the first action and that the probate court erred in ruling that petitioner was collaterally estopped on that issue. However, we further find that the probate court fully considered petitioner's claim despite its ruling on the collateral estoppel issue. Therefore, any error committed by the probate court on this issue was harmless since petitioner received full consideration of its claim and a proper decision on the merits.

Affirmed.