SOLTIS v FIRST OF AMERICA BANK-MUSKEGON

Docket No. 143864. Submitted November 2, 1993, at Lansing. Decided
February 7, 1994, at 9:40 A.M. Leave to appeal sought.

Richard J. Soltis, the surviving husband of decedent Dora E.
Soltis, petitioned the Muskegon County Probate Court to set
aside a revocable inter vivos trust created and last amended by
the decedent in 1987 for the sole benefit of her son, Brian Foy,
and into which the petitioner had transferred his share of the
marital assets in order to avoid an ex-wife's demands for
increased alimony. The petitioner sought to make the trust
assets part of the decedent's estate, contending that the trust
was illusory and testamentary and its assets therefore were
subject to the spousal election statute, MCL 700.282; MSA
27.5282; that the decedent's amendment of the trust breached a
contract between the petitioner and the decedent that, without
the consent of the other, neither would amend trusts each had
created for the other's benefit in 1985; and that Foy and First
of America Bank-Muskegon, the successor trustee of the trust,
are equitably estopped from denying him his rights under the
decedent's 1985 trust. Following a bench trial, the court, Tom
H. Linck, J., dismissed the petition. The petitioner appealed.

The Court of Appeals *held:*

1. The decedent's retention of control over the trust assets
and reservation of the right to amend or revoke the trust
during her lifetime did not render the trust illusory or trans-
form it from an inter vivos trust into a testamentary trust that
would be subject to the statutory spousal election.

2. The petitioner failed to establish that he and the decedent
had agreed to each execute a trust for the benefit of the other
and to refrain from amending those trusts without the consent
of the other, absent proof of such a provision in the decedent's
trust, a reference in the trust to such a contract, or a contract
signed by the decedent.

3. The petitioner's claim of equitable estoppel concerning

REFERENCES

Am Jur 2d, Trusts § 20 et seq.; *Wills §§ 1651-1656.*
See ALR Index under Election Under or Against Will; Trusts and
Trustees.

modification of the decedent's trust is precluded by clear language in the trust allowing for its amendment or revocation.
Affirmed.

1. HUSBAND AND WIFE — INTER VIVOS TRUSTS — SPOUSAL ELECTION.

An inter vivos trust to which a spouse transfers all assets, excludes the other spouse as beneficiary, retains control over the assets as trustee, and reserves the right to amend or revoke the trust is not, by virtue of such retention of control or reservation of the right to amend or revoke, rendered a testamentary or illusory trust that may be subject to the spousal election (MCL 700.282; MSA 27.5282).

2. TRUSTS — CONTRACTS.

A contract to create a trust for the benefit of another or to not revoke a trust can be established by a provision of the trust stating material provisions of the contract, by an express reference in the trust to a contract and extrinsic evidence proving the terms of the contract, or by a writing signed by the grantor.

*Vander Ploeg, Ruck, Luyendyk & Wells* (by *John C. Ruck*), for the petitioner.

*Varnum, Riddering, Schmidt & Howlett* (by *Thomas J. Mulder* and *Bryan K. Anderson*), for the respondents.

Before: JANSEN, P.J., and FITZGERALD and P. J. CONLIN,* JJ.

JANSEN, P.J. Petitioner Richard Soltis appeals as of right from an August 8, 1991, order of the Muskegon County Probate Court denying his petition to set aside the Dora E. Soltis Trust. We affirm.

Richard Soltis and Dora Soltis were married on January 10, 1976. This was the second marriage for both. Dora had one son, Brian Foy, from a prior marriage and Richard had three children from his prior marriage. In August 1977, Dora

* Circuit judge, sitting on the Court of Appeals by assignment.

created an inter vivos trust and pour-over will. Richard did not have an estate plan at that time. In February 1985, Richard created an inter vivos trust and pour-over will, naming himself as the trustee.

In March 1985, Dora amended her 1977 trust and named herself as the trustee and respondent First of America Bank-Muskegon as the successor trustee. Dora clearly stated in the 1985 trust that her intention was to provide primarily for her son Brian and secondarily for Richard, who was financially secure. In March 1985, both Richard and Dora amended their respective trusts and both expressly reserved the power to alter, amend, or revoke their trusts.

In September 1986, in order to avoid his former wife's demands for increased alimony, Richard transferred all his interest in the marital property to Dora's trust, while retaining a life estate in the property. In August 1987, Richard transferred all his interest in the marital home to Dora's trust in return for consideration of approximately $11,000. Richard could live in the marital home rent free for a period of nine months after Dora's death should she die before him.

In August 1987, Dora again amended her trust providing that all of the income go to Brian. Richard was eliminated as a beneficiary of the trust, with no explanation given in the trust itself. However, Richard has conceded that he was financially secure. Further evidence indicated that Dora, who had cancer at the time, wanted to guard against her incapacity, wished to provide for her son and grandson, and wished to prevent Richard's ex-wife from attaching Dora's property. Dora subsequently died of cancer on August 21, 1989.

On June 20, 1990, Richard petitioned the probate court to set aside Dora's 1987 trust and to

make the trust assets part of Dora's estate. In his complaint, Richard alleged that the 1987 amendment was a fraud upon his marital rights, that the amendment constituted a breach of contract between the parties to create trusts for the benefit of one another, and that the trustee was estopped from denying his rights as a surviving spouse because he relied on the provisions of the 1985 trust in forgoing other forms of financial security. A two-day bench trial was held before the Muskegon County Probate Court on March 25 and 26, 1991. On April 22, 1991, the court issued its opinion and denied the petition to set aside the inter vivos trust. On August 8, 1991, the court entered a judgment consistent with its opinion, and petitioner now appeals from that judgment.

Petitioner first argues that the assets in the trust should be included within decedent's estate for purposes of the spousal election statute. MCL 700.282; MSA 27.5282. Specifically, petitioner argues that the trust is illusory and testamentary, was a fraud on his marital rights, and is therefore invalid.

The spousal election statute provides in pertinent part:

(1) If a decedent who was domiciled in this state dies testate leaving a surviving spouse, the fiduciary appointed to represent the estate, before the date for presentment of claims, shall serve notice on the surviving spouse of the spouse's right to an election as provided by this section and to file with the court an election in writing that the spouse elects 1 of the following:

\* \* \*

(b) That the spouse will take ½ of the sum or share that would have passed to the spouse had the testator died intestate, reduced by ½ of the value of all property derived by the spouse from

the decedent by any means other than testate or intestate succession upon the decedent's death. [MCL 700.282; MSA 27.5282.]

This provision essentially provides that a testamentary disposition is to be subject to the surviving spouse's election to take one-half of what the spouse would have received had the decedent died intestate.

An inter vivos trust, as in this case, is a trust created between the living. It is a trust created by the grantor during the grantor's lifetime to go into effect during the grantor's lifetime. An inter vivos trust is contrasted with a testamentary trust in that a testamentary trust is contained in a will and goes into effect at the testator's death. 76 Am Jur 2d, Trusts, § 11, p 41. An inter vivos transfer or gift is not testamentary and is therefore not subject to the spousal election. See *Trabbic v Trabbic,* 142 Mich 387, 390; 105 NW 876 (1905).

Petitioner, however, argues that the trust is testamentary in character because decedent retained substantial control over the trust assets during her life by declaring herself trustee and by retaining the power to amend or revoke the trust. The reservation of the power to revoke the trust does not render it testamentary, nor does it void the trust. *Goodrich v City Nat'l Bank & Trust Co,* 270 Mich 222, 229; 258 NW 253 (1935). Further, a grantor may establish a trust naming herself as the trustee and receive the income generated by the principal held for the benefit of another. *Osius v Dingell,* 375 Mich 605, 614; 134 NW2d 657 (1965); *Sabin-Scheiber v Sabin,* 128 Mich App 427, 431; 340 NW2d 114 (1983). Thus, the trust is not testamentary in character merely because decedent retained substantial control over the trust.

Petitioner further argues that the trust is illu-

sory because decedent has, in effect, defeated his statutory elective share by removing the property from the estate. Courts in other jurisdictions have found such inter vivos trusts to be illusory, and therefore invalid, where the grantor in effect defeated the statutory elective share of the spouse by removing the property from the estate while allowing the grantor to retain control over the assets in the trust. See *Seifert v Southern Nat'l Bank,* 305 SC 353; 409 SE2d 337 (1991). However, under similar facts, our Supreme Court has rejected a spouse's attempt to invalidate such a trust on the ground that it was illusory. In *Goodrich, supra,* our Supreme Court upheld a trust where the grantor reserved power to change the beneficiaries, amend the trust, revoke the trust in whole or in part, withdraw all or part of the estate, and control investments. In *Rose v Union Guardian Trust Co,* 300 Mich 73; 1 NW2d 458 (1942), our Supreme Court indicated that the fact that the grantor makes certain reservations in creating the trust does not necessarily affect the validity of the trust. Accordingly, following the dictates of *Goodrich* and *Rose,* we find that the trust in the instant case is not testamentary or illusory.

There is also no indication that decedent intended to defraud petitioner of his marital rights. First, petitioner concedes that he was at all times independently financially secure. Other evidence indicated that decedent wished to amend her trust to guard against her incapacity (she knew that she had cancer), to provide for her son and grandson, and to prevent petitioner's ex-wife from attaching the property. These purposes are valid and do not indicate any intent to defraud petitioner of his marital rights. *Goodrich, supra,* p 232.

We further note that the Probate Code was amended by the Legislature in 1979 and the aug-

mented estate concept of the Uniform Probate Code (UPC § 2-202), which would include in the decedent's estate any transferred property in which the decedent retained the power to revoke the transfer or the right to enjoy, consume, invade, or dispose of the property for the decedent's own benefit or retain a right to income, was specifically not included in the Revised Probate Code, MCL 700.1 *et seq.*; MSA 27.5001 *et seq.* Thus, although it is clear that an inter vivos trust circumvents the purpose of the spousal election provision to financially provide for living spouses, the spousal election provision does not include the concept of an augmented estate.

We are aware that spouses who may not be as financially secure as the petitioner in the instant case may effectively be disinherited by the use of an inter vivos trust because of the language of the spousal election statute and the Supreme Court's decisions in *Goodrich* and *Rose.* However, we are bound by the Supreme Court's decisions because only the Supreme Court may modify or overrule its prior decisions. *Boyd v W G Wade Shows,* 443 Mich 515, 523; 505 NW2d 544 (1993). Additionally, the Legislature could have provided for an augmented estate in the spousal election statute, but it chose not to do so and we must also follow the dictates of our Legislature through its statutes. Absent any showing of fraud upon petitioner's marital rights, we must conclude that decedent's assets in the inter vivos trust do not fall within the spousal election provision.

Accordingly, the probate court did not err in ruling that decedent's assets in the inter vivos trust could not be included in decedent's estate under the spousal election statute.

Next, petitioner claims an implied contract existed between him and decedent that neither

would amend their respective trusts without the consent of the other. Petitioner claims that decedent's amended trust of 1987 breached that implied contract. The probate court found that no implied contract existed in view of the language in decedent's 1985 trust.

Although the Legislature has developed specific rules governing the establishment of a contract concerning a will, the Legislature has not addressed the establishment of a contract concerning a trust. We believe that the statute governing the establishment of a contract concerning a will is sufficiently analogous to guide our analysis of this issue.

MCL 700.140; MSA 27.5140 provides:

> (1) A contract to make a will or devise, not to revoke a will or devise, or to die intestate, if executed after the effective date of this act, can be established only by 1 of the following:
> (a) A provision of a will stating material provisions of the contract.
> (b) An express reference in a will to a contract and extrinsic evidence proving the terms of the contract.
> (c) A writing signed by the decedent evidencing the contract.
> (2) The execution of a joint will or mutual wills does not give rise to a presumption of a contract not to revoke the will or wills.

An agreement that mutual wills are to be binding on the survivor cannot be inferred from the identical and reciprocal provisions alone, but must be established by other evidence. *In re Thwaites Estate,* 173 Mich App 697, 702; 434 NW2d 214 (1988). The party seeking specific performance of a contract to leave property under a will has the burden of proving the contract. *Id.,* pp 702-703. Petitioner

is therefore required to prove an actual express agreement and not a mere unexecuted intention. *Id.,* p 703.

In the instant case, petitioner has failed to meet his burden of proving that a contract to execute mutual trusts existed. There is no provision in the trusts stating material provisions of a contract, nor is there any express reference in the trusts to a contract. There is no evidence revealing any writing signed by decedent proving that a contract existed.

In fact, decedent's March 27, 1985, trust contained the following provision:

> RESERVED POWERS: Settlor reserves the right to alter, amend, revoke or terminate this agreement in whole or in part without the consent of Trustee, but only upon written notice to Trustee (Settlor's will shall not constitute such notice); provided, however, that if altered or amended, the duties, powers and responsibilities of Trustee shall not be changed substantially without its consent. Trustee agrees to reassign or reconvey to Settlor any property affected by the exercise of such right.

This provision militates against petitioner's argument that any implied contract existed. Rather, the exact opposite intention to amend the trust is evidenced by this provision. Accordingly, the probate court did not clearly err in finding that no contract existed restricting decedent's right to amend her trust because the evidence supports the probate court's factual findings in this regard. MCR 2.613(C).

Finally, petitioner argues that respondents are estopped to deny him his rights under decedent's 1985 trust because decedent told him that he would be provided for as set forth in the 1985 trust and that he consequently relied on those represen-

tations when making other financial decisions. We agree with the probate court that the clear language of the trust allowing modification precluded the court from adopting an estoppel theory.

Petitioner's claim is one of equitable estoppel. Equitable estoppel arises where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts. *Hoye v Westfield Ins Co,* 194 Mich App 696, 705; 487 NW2d 838 (1992).

In this case, the elements of equitable estoppel have not been shown. Petitioner did not justifiably rely on any alleged representations made by decedent because the language of the 1985 trust expressly reserved decedent's right to alter, amend, revoke, or terminate the agreement in whole or in part. Petitioner testified that he was aware of this provision and understood that the provision allowed decedent to amend her trust without his consent. Further, there was evidence that petitioner was aware of the changes made in the 1987 trust.

Under these facts, the doctrine of equitable estoppel does not apply. Accordingly, the probate court did not err in finding that there was no justifiable reliance by petitioner.

Affirmed.