*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E. EARL LYDEN TRUST.

---

DENICE LYDEN,

        Appellant,

v

HUNTER LYDEN, Trustee of the E. EARL LYDEN TRUST,

        Appellee,

and

CHRISTOPHER PIEDMONT,

        Other-Party.

FOR PUBLICATION
April 4, 2024
9:05 a.m.

No. 362112
Muskegon Probate Court
LC No. 20-002025-TV

---

Before: M. J. KELLY, P.J., and MARKEY and CAMERON, JJ.

M. J. KELLY, P.J.

Appellant, Denice Lyden, appeals by delayed leave granted[1] the probate court's order granting summary disposition under MCR 2.116(C)(10) in favor of appellee, Hunter Lyden, who is the trustee for the E. Earl Lyden Trust. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

The E. Earl Lyden Trust is a revocable inter vivos trust that was created by Denice's husband, Earl Lyden, in 2001. Hunter is Earl's son from a prior marriage. Earl was the Trust's sole settlor and its trustee. Pursuant to the terms of the Trust, for his lifetime, Earl retained the

---

[1] *In re E Earl Lyden Trust*, unpublished order of the Court of Appeals, entered March 7, 2023 (Docket No. 362112).

power to revoke or amend the Trust either partially or completely. As relevant to this appeal, in 2018, Earl wanted to designate the Trust as the beneficiary for two of his retirement plans. His lawyer advised, however, that Denice would have to waive her rights of survivorship in the plans. Thereafter, Denice signed consent forms relinquishing her spousal-survival interests in the retirement plans. The Trust was then amended. Under the terms of the 2018 Trust, Denice was named as the beneficiary of all income generated by the Trust for her lifetime and up to 3% of the principal if necessary for her medical expenses. In the event that she remarried, Denice would no longer be entitled to the Trust income, but she would receive a $200,000 payout. Upon her death, the principal was to pass to Hunter.

In 2019, Denice filed a complaint for divorce in Missouri, and the court entered a status quo order that generally prohibited the parties from dissipating the marital assets or transferring marital assets. In February 2020, while the divorce was pending, Earl told his lawyer that he desired to remove Denice as a beneficiary under the Trust and designate Hunter as its sole beneficiary and successor trustee. He asked if he could do so legally notwithstanding that divorce litigation had been commenced. His lawyer advised him that he could make changes to his beneficiary designations, but that such changes would only affect the distribution of property upon his death. His lawyer further noted that changing the beneficiary designation would have no effect on the distribution of property during the divorce proceedings, which would be resolved under equitable principles. In response, Earl related that he intended to "live for a long time." Subsequently, he amended the Trust to designate Hunter as the sole beneficiary and successor trustee. The 2020 Trust expressly stated that a divorce was pending and that Earl was intentionally making no provision for Denice in the trust. Earl informed Denice that he had amended his trust to remove her as a successor trustee and beneficiary.

In March 2020, Earl was hospitalized. At some point during or after his hospitalization, he informed Denice that he had stage IV lung cancer. The divorce proceedings, which continued in Missouri, resulted in a settlement agreement that would result in a near-equal division of the marital assets. However, in light of Earl's cancer diagnosis, Denice wanted to be designated as the beneficiary of his life insurance policy in lieu of spousal support. Negotiations on that point were ongoing when, in May 2020, Earl was determined to be physically incapacitated and unable to transact his own affairs. He died in June 2020 before the divorce proceedings could be finalized.

Denice received $69,000 from Earl's probate estate as her elective share as surviving spouse. She also received approximately $300,000 from the sale of a marital home in Missouri, two vehicles worth approximately $22,000, and a bank account with a current balance of $1,500. Notwithstanding that the assets subject to the Trust administration would have been divided nearly equally in the divorce, in light of the 2020 amendments, they instead passed solely to Hunter.

Denice filed an eight-count petition in the probate court seeking to set aside or reform the 2020 Trust. Several of the counts were dismissed by the trial court or voluntarily by Denice and are not at issue. As relevant to this appeal, Denice argued that the 2020 Trust was contrary to public policy because the 2020 Trust disinherited Denice and caused the near total divestment of marital property. She also asserted that she was entitled to the creation of a constructive trust in her favor because it was inequitable for a large portion of the assets that had been accumulated during the marriage to pass to Hunter without any provision for her. Finally, she contended that

the 2020 Trust should be reformed under MCL 700.7415 (allowing a court to reform a trust to correct mistakes).

Hunter filed a motion for summary disposition, arguing that Michigan public policy allows a spouse to be disinherited under the other spouse's trust. He added that a constructive trust was not warranted because he had not acquired Earl's estate or the trust assets by improper means. Further, he argued that reformation under MCL 700.7415 was not warranted because Denice had acknowledged during her deposition that she was unaware of any mistake of fact or law that affected Earl's intent and the terms of the 2020 Trust.

In response, Denice argued that Earl had a fiduciary duty to protect her interest in the "marital" assets held by or connected to the trust. She asserted that the fiduciary duty arose because she had placed her faith, confidence, trust, and reliance in Earl to handle their finances. Further, she contended that Earl's breach of that fiduciary duty justified the imposition of a constructive trust to protect the couple's marital assets. Finally, she asserted that she was entitled to reformation because her income-for-life benefit under the 2018 Trust was intended to be irrevocable and reformation of the 2020 Trust was required to effectuate that intent. Alternatively, she asserted that if Earl had intended for that benefit to be revocable, then he effectively defrauded her into waiving her survivorship or beneficiary rights under the retirement plans, so reformation was warranted on the basis of fraud.

Following oral argument, the trial court granted Hunter's motions for summary disposition. The court reasoned:

> I'm looking at the allegation that the change was contrary to public policy. I don't find that it was against public policy, because it did not interfere with the freedom to marry, or divorce, or limit religious freedoms, or that it was frivolous or capricious.
>
> With regards to whether or not _Soltis_ [_v First of America Bank-Muskegon_, 203 Mich App 435; 513 NW2d 148 (1994),] should stand in the light of this case, I do find that we're never going to be 100 percent sure what the motives were for our settlor to make the changes that were made. However, I believe, from what I've heard, that he wanted to protect his assets because Denice was divorcing him. He knew he was dying from stage four terminal lung cancer and he wanted to provide an inheritance for Hunter Lyden, because he knew he wouldn't be around to help him anymore during his life. He was going to be gone. And so he may need more assets than what he originally had planned on giving him, because he wasn't going to be there throughout his life to help him, so I think that is a very valid reason that he could have changed beneficiaries.
>
> Denice did not have a vested right, because Earl had every right to amend his trust at any time during his life. I'm looking for other points here.
>
> With regards to the talk about the divorce in Missouri, it didn't happen. She wasn't awarded any of the marital assets because there is no judgment of divorce. And so as a matter of law, no judgment was entered in that case and this court can't

award her anything from that case or find that she is due any assets from that case because there is no judgment from that case and it's closed. It couldn't be finished because, unfortunately, Mr. Earl Lyden had passed away, and so I don't think that that has any effect on this case.

And I also don't find that further discovery in this matter would change the outcome, because, as a matter of law, again, he had – he had the right to change his beneficiary.

In addition, the court concluded that a constructive trust was inappropriate because (1) Earl had a legal right to title assets in his own or the Trust's name, (2) Earl owed no fiduciary duty to Denice, (3) neither Hunter nor the Trust were unjustly enriched by the 2020 Trust, (4) the Missouri status quo order was not an impediment to the execution of the 2020 Trust, (5) Denice did not have a vested right in the assets or income of the Trust, and (6) Denice knew that the 2018 Trust could be modified by Earl at any time. Finally, the probate court determined that there was no fraud or mistake of fact or law that would justify reformation under MCL 700.7415. This appeal by delayed leave granted follows.

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

Denice contends that the probate court erred by granting Hunter's motions for summary disposition because there existed a genuine issue of material fact regarding whether Earl intended to defraud Denice of her interest in "marital assets."[2] In regard to the reformation and constructive-trust claims, Denice additionally maintains that the trial court erred by summarily dismissing the claims because Earl breached a fiduciary duty that he owed to Denice to protect her interest in the marital assets subject to the Trust administration.

A trial court's decision on a motion for summary disposition is reviewed de novo. *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). We also review de novo questions of statutory interpretation, *In re Casey Estate*, 306 Mich App 252, 256; 856 NW2d 556 (2014) and "a probate court's construction and interpretation of the language used in a will or a trust." *In re Stillwell Trust*, 299 Mich App 289, 294; 829 NW2d 353 (2012). "Whether to recognize a cause of action for breach of fiduciary duty is a question of law reviewed de novo because the existence of a duty is generally a question of law[.]" *Calhoun Co v Blue Cross Blue Shield Mich*, 297 Mich App 1, 20; 824 NW2d 202 (2012) (citations omitted).

---

[2] The term "marital assets" is used during divorce to refer to assets that, equitably, belong to both spouses without regard to how such assets are titled. Thus, in the context of divorce proceedings, assets held by the Trust could be distributed in a judgment of divorce notwithstanding that Hunter was the Trust's sole beneficiary. Given that no divorce occurred in this case, our references to marital property refer solely to property that would have been distributed equitably in the divorce but for Earl's death.

-4-

B. ANALYSIS

Reformation of the 2020 Trust and imposition of a constructive trust are different equitable remedies to address alleged fraud and breach of fiduciary duties. See *In re Filibeck Estate*, 305 Mich App 550, 552; 853 NW2d 448 (2014) ("A constructive trust is an equitable remedy created not by intent or by agreement, but by the operation of law"); *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 377; 761 NW2d 353 (2008) (reformation is an equitable remedy). Denice argues that reformation or the imposition of a constructive trust is warranted because the 2020 Trust violated public policy due to its being a fraud upon marital assets and a breach of Earl's fiduciary duties to her. Thus, the issues for this Court to determinate are (1) whether the 2020 amendments were in violation of public policy and (2) whether Earl breached a fiduciary duty to Denice.

"A trust may be created only to the extent its purposes are lawful, not contrary to public policy, and possible to achieve." MCL 700.7404. Additionally, a trust terminates if the purposes of the trust "are found by a court to be unlawful or contrary to public policy." MCL 700.7410(1). In *Terrien v Zwit*, 467 Mich 56, 66-67; 648 NW2d 602 (2002), our Supreme Court provided a framework upon which Michigan's public policy may be ascertained. The Court explained:

> In identifying the boundaries of public policy, we believe that the focus of the judiciary must ultimately be upon the policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law. The public policy of Michigan is *not* merely the equivalent of the personal preferences of a majority of this Court; rather, such a policy must ultimately be clearly rooted in the law. There is no other proper means of ascertaining what constitutes our public policy. [*Id.* (citation omitted.]

On appeal, Denice argues that Earl's 2020 amendment disinheriting her in his Trust is contrary to public policy because it effectuates a fraud on marital assets. She urges this Court to adopt a claim for "fraud on marital assets," which she purports would allow a surviving spouse to receive flexible equitable relief in cases where a decedent spouse has "by any conduct, conveyance, transfer, execution, or amendment of will or trust, designation of beneficiary status or the like, with actual or constructive intent, deprived the surviving spouse of a significant share in the parties' marital assets." In support of her claim, she directs this Court primarily to caselaw and legal articles addressing instances where consideration of fraud, equity, or fiduciary obligations resulted in the courts treating as jointly owned assets that were titled in only one party's name or held in an account under one party's name. She also suggests that this Court adopt marital fraud factors set forth in Missouri caselaw.

We decline to adopt a claim of fraud on marital assets or to rely upon out-of-state caselaw to inform public policy in Michigan. Indeed, such an action is unrequired given that Michigan public policy disfavors a spouse from defrauding the other spouse. See *Soltis*, 203 Mich App at 441. In *Soltis*, this Court concluded that, if there is no indication of intent to defraud the other spouse of his or her marital rights, a spouse may use an inter vivos trust to effectively disinherit the other spouse. *Id.* Here, Earl executed the 2020 restatement of the Trust to provide for Hunter

-5-

in light of his pending divorce. This is a proper purpose, *id*. at 440, because, contrary to Denice's assertions on appeal, there is no indication that Earl intended to defraud her of her marital rights.

Instead, the record reflects that before amending the Trust in 2020, Earl asked his lawyer whether such an action was legal in Michigan. He was then expressly advised that the modification would only trigger if he died and that it would not preclude the court from dividing the assets held by the trust as part of the property settlement in the divorce proceedings. Further, the evidence shows that Earl disclosed the trust's assets as marital property in filings with the family court, that he negotiated the terms of the property settlement in good faith, that he offered Denice a near-equal split of the marital assets, that he told Denice that he had modified the trust agreement to disinherit her, and that he informed Denice that he had been diagnosed with terminal lung cancer that was rapidly advancing. The reason the property settlement was not finalized before Earl's death was because Denice wanted his life insurance proceeds in lieu of spousal support, and negotiations on the issue of those proceeds were not resolved before Earl became medically incapacitated. In light of the information available to her, Denice possessed sufficient knowledge to anticipate that Earl might die before the divorce was finalized and that, as a result, she would be disinherited under the terms of his 2020 Trust. We conclude that, under these circumstances, Denice has not made the requisite showing that the 2020 restatement of the trust agreement violated public policy because she has not shown that Earl committed fraud upon her marital assets.

Moreover, Denice has not demonstrated that Earl owed her a fiduciary duty. MCL 700.7603(1) provides that "while a trust is revocable, rights of the trust beneficiaries are subject to the control of, and the duties of the trustee owed exclusively to, the settlor." Here, Denice was a beneficiary of Earl's revocable inter vivos trust. She was not a settlor. Consequently, the only fiduciary duty owed by Earl, as trustee, was to himself as settlor. Moreover, "[a]lthough a fiduciary relationship may exist between husband and wife, . . . [a]t the time of divorce proceedings, there certainly [is] no reposing of faith, confidence, and trust and the placing of reliance by one party upon the judgment and advice of the other party." *Nederlander v Nederlander*, 205 Mich App 123, 127; 517 NW2d 768 (1994). Here, as was the case in *Nederlander*, at the time of the divorce proceedings, Denice cannot say that she continued to place her faith, confidence, and trust in Earl. *Id*. Rather, assuming *arguendo* that a fiduciary relationship existed between Earl and Denice during the marriage because Earl directed the estate planning activities and handled the couple's finances, that relationship no longer existed in the middle of the divorce proceedings, which is when the alleged breach of his fiduciary duties occurred.

Given that there is no violation of public policy and that Earl did not owe any fiduciary duties to Denice, the trial court did not err by granting Hunter's motions for summary disposition.

Affirmed. Hunter may tax costs as the prevailing party. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Thomas C. Cameron